781 N.W.2d 170 (2010)
STATE of Minnesota, Plaintiff,
v.
Laura Josephine KNOCH, Defendant,
Jeri Ann Watson, Defendant.
Nos. A09-1384, A09-1385.
Court of Appeals of Minnesota.
April 20, 2010.
*172 Lori Swanson, Attorney General, St. Paul, MN, and James C. Backstrom, Dakota County Attorney, Vance B. Grannis, III, Assistant County Attorney, Hastings, MN, for plaintiff.
David W. Merchant, Chief Appellate Public Defender, Theodora Gaïtas, Assistant Public Defender, St. Paul, MN, for defendants.
Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

OPINION
JOHNSON, Judge.
In these consolidated cases, Laura Josephine Knoch and Jeri Ann Watson were charged separately with fifth-degree possession of a controlled substance, methamphetamine. Knoch and Watson jointly moved to dismiss their cases for lack of probable cause on the ground that the state had evidence only of a field test, but not of a confirmatory test, to prove that the substances seized from them are, in fact, methamphetamine. After an evidentiary hearing, the district court denied the joint motion to dismiss. At Knoch's and Watson's request, the district court then certified two questions for a decision by this court. We resolve the issues raised by Knoch and Watson by holding that in a prosecution for possession of a controlled substance, the state may, depending on the facts and circumstances of a particular case, establish probable cause based on evidence of a positive field test of a substance alleged to be a controlled substance, without evidence of a confirmatory test of the substance.

FACTS

A. State v. Knoch

Knoch was charged after law-enforcement officers seized a substance that was believed to be methamphetamine from a dresser drawer in her bedroom. On December 20, 2006, Dakota County Drug Task Force agents and an Inver Grove Heights Police Department officer executed a warrant for the search of an apartment leased by Knoch. She was found in one of the apartment's bedrooms; three other persons were found in another bedroom. During the search, Officer Joseph Gelhaye found various drug-related items, "including a zippered pouch found in a drawer, which held pipes and baggies that contained residue" and "a document in Knoch's name in the dresser." Officer Gelhaye later testified that, in other cases, he has found methamphetamine in similar zippered pouches.
Officer Gelhaye performed a field test on one of the pipes found in Knoch's dresser drawer. He used the Narcotic Identification Kit (NIK) Test U manufactured by NIK Public Safety, Inc., which is also known as a preliminary sodium nitroprusside color test. If a substance tested with the NIK Test U turns blue, the test indicates *173 the presence of methamphetamine. Knoch's pipe tested positive for trace amounts of methamphetamine. No additional testing was performed to confirm the field test.
In March 2007, the state charged Knoch with one count of fifth-degree possession of a controlled substance, methamphetamine, in violation of Minn.Stat. § 152.025, subd. 2(1) (2006), and one count of possession of drug paraphernalia, in violation of Minn.Stat. § 152.092 (2006).

B. State v. Watson

Watson was charged after law-enforcement officers seized a substance that was believed to be methamphetamine from her purse. On August 8, 2007, officers from the Dakota County Drug Task Force executed a warrant for the search of Watson's residence. During the search, officers found drug paraphernalia in a bedroom "that included glass methamphetamine and marijuana pipes and an electronic scale. One of the methamphetamine pipes contained residue. Inside a purse containing identification in Watson's name, officers found three small baggies containing a substance the officers believed to be methamphetamine." After being advised of her Miranda rights and agreeing to speak with officers, Watson admitted that the purse belonged to her and that she uses methamphetamine.
The next day, Officer Gelhaye used a NIK Test U to test two of the three bags suspected to contain methamphetamine. The substances in both bags tested positive for the presence of methamphetamine. No additional testing was performed to confirm the field test.
In August 2007, the state charged Watson with one count of fifth-degree possession of a controlled substance, methamphetamine, in violation of Minn.Stat. § 152.025, subd. 2(1), and one count of possession of drug paraphernalia, in violation of Minn.Stat. § 152.092.

C. Joint Proceedings in District Court
On November 13, 2007, Knoch and Watson filed a joint motion to dismiss the complaints in their respective cases for lack of probable cause. They argued that "the presumptive drug screening test is insufficient evidence for the State to meet [its] burden of establishing probable cause at a contested hearing."
In July 2008, the district court held an evidentiary hearing at which it received testimony from four persons. The state called three witnesses. Officer Gelhaye testified about his search of Knoch's residence and his administration of field tests on the substances seized from Knoch and Watson. Allen Miller, an employee of Armor Holdings Forensics, who assists customers with the use and application of NIK Public Safety products, testified that "the sodium nitroprusside test tests for a secondary amine, so if the secondary amine is present, it's going to give a positive result." Susan Gross, a forensic science supervisor at the Minnesota Bureau of Criminal Apprehension, agreed that "the sodium nitroprusside test [is] a method of analysis that is generally accepted within the scientific community" for the presumptive identification of controlled substances. In addition, Gross testified that she has never performed a sodium nitroprusside color test that yielded a positive result for methamphetamine but later was contradicted by a confirmatory test.
The state also introduced evidence of a laboratory study and a pilot project concerning the accuracy of the sodium nitroprusside color test. The study was conducted by the National Forensic Science Technology Center on preliminary field-test kits, including those manufactured by *174 NIK Public Safety. The substances tested in the study included pure drugs, pure drugs with cutting agents, and street samples. In that study, no false positives were reported for the tests conducted with the NIK Test U on either the known methamphetamine samples or the street methamphetamine samples. The pilot project was conducted by the BCA using a test that employs the same chemicals as the NIK Test U. The BCA subjected 300 samples that had tested positive for methamphetamine when utilizing a preliminary test to confirmatory instrumental analysis. "Of [the] 300 cases that contained methamphetamine, every one that was positive with the color tests came back positive" when subjected to confirmatory testing.
Knoch and Watson jointly called Sanford Angelos, who worked for the United States Drug Enforcement Administration (DEA) for 30 years as a forensic chemist. Angelos testified that the DEA regularly performs color tests on substances seized by federal law-enforcement agencies. Angelos testified, however, that "a chemist cannot base firm conclusions on the results of a presumptive test alone" and that DEA agents would not rely on only a color test to identify a controlled substance. Angelos also testified that, without a confirmatory laboratory test, it would be reasonable to doubt that a substance that field-tested positive for methamphetamine actually is methamphetamine.
After reciting extensive findings of fact, the district court considered "whether probable cause exists to support the charges against Defendants, given the facts and circumstances of each case, including, in both cases, results from NIK Test U that indicated the presence of a secondary amine." The district court cited various opinions of the supreme court and this court on the subject of probable cause. The district court denied the joint motion to dismiss based on its conclusion that "Officer Gelhaye correctly used a test that scientific testing and studies have deemed reliable. The NIK test results are admissible at trial and could be considered by a jury." The district court further stated, "Though confirmatory testing is probative in determining the identity of a controlled substance, its absence is not fatal to the State's case." At the end of its lengthy decision, the district court concluded:
No scientific evidence is necessary to prove beyond a reasonable doubt the identity of a controlled substance. Nonetheless, the State has provided reliable testing that is generally accepted in the scientific community, and that, when combined with the facts of each case, would allow a jury to find that the substances are in fact methamphetamine. Thus, the State has shown probable cause to believe that Defendants committed the offenses charged.
Accordingly, the district court denied the motion. Knoch and Watson moved for reconsideration, and the district court denied that motion as well.
In June 2009, Knoch and Watson moved to certify a question of law pertinent to the motion to dismiss. The district court granted the motion, reiterated its prior order, and certified the following two questions:
A. Is a positive test result indicating the presence of a secondary amine in a presumptive and not confirmatory test, such as a NIK Test U, sufficient, taken together with other case-specific facts and circumstances, to support a finding of probable cause in a controlled substance prosecution?
B. Assuming a positive preliminary test result, is the State required to obtain a confirmatory test to establish probable cause in a criminal prosecution?
*175 In November 2009, the state filed a motion in this court to dismiss the case on the ground that the certified questions are not "important or doubtful," as required by the rule concerning certified questions in criminal cases. See Minn. R.Crim. P. 28.03. A special term panel of this court denied the motion.

ISSUE
In a prosecution for possession of a controlled substance, may the state ever establish probable cause based on evidence of a field test of a substance alleged to be a controlled substance, without evidence of a confirmatory test of the substance?

ANALYSIS

A. Reformulation of Certified Question
As an initial matter, we must consider Knoch's and Watson's argument that we should reformulate the questions certified by the district court. Knoch and Watson urge us to reformulate the first certified question to read as follows: "Are NIK tests and other presumptive color tests sufficient evidence of the identity of a controlled substance to establish probable cause to proceed to trial in a drug offense?" This proposed question is similar to the certified question that Knoch and Watson proposed to the district court. They argue that reformulation is necessary for two reasons. First, they contend that the first certified question is not confined to the subject of the motion before the district court, the validity and reliability of the NIK Test U. They contend that it is improper to frame a question that could encompass any field test. Second, they contend that the reference in the first certified question to "case-specific facts and circumstances" hinders this court's ability to answer the question with a "yes" or "no" answer.
In certain circumstances in a criminal case, including the pendency of a motion to dismiss, the district court may certify "any question of law ... which in the opinion of the judge is so important or doubtful as to require a decision of the Court of Appeals." Minn. R.Crim. P. 28.03 (2009).[1] An appellate court "has the authority to clarify the question certified." State v. Larivee, 656 N.W.2d 226, 228 (Minn.2003). The supreme court has stated, "The certification should be carefully and precisely framed so as to present distinctly and clearly the question of law involved...." Thompson v. State, 284 Minn. 274, 277, 170 N.W.2d 101, 103 (1969). The supreme court also has stated, "An appellate court will not consider abstract or unnecessarily general questions which might result in one answer to one set of circumstances but another answer to a different set of circumstances." Id. In addition, "The certification procedure should not be used to present a hypothetical question or to secure an advisory opinion. Nor should it be invoked until the record is sufficiently developed to present a substantive issue." State v. Filipovic, 312 Minn. 147, 151, 251 N.W.2d 110, 112 (1977).
Knoch's and Watson's first asserted ground for rephrasing the first certified question does not persuade us to limit the question to the NIK Test U. The rule on which Knoch and Watson and the district court relied permits a party to obtain an answer to a "question of law." Minn. R.Crim. P. 28.03. If we were to limit our analysis to the NIK Test U, we would necessarily rely on the factual record developed *176 in the district court in this case and, thus, would be answering a mixed question of fact and law rather than a pure question of law. See State v. Moller, 276 Minn. 185, 187, 149 N.W.2d 274, 276 (1967) (stating that certification procedure is not appropriate for "mixed question of fact and law"). The purpose of the certification procedure in rule 28.03 is not to obtain review of a district court's ruling on a particular motion on an interlocutory basis. Id. (stating that certification procedure is "not to be used as a substitute for appeal"). Rather, the purpose of the rule is to obtain an answer from an appellate court on a question of law that is embedded within a matter pending in the district court. See Filipovic, 312 Minn. at 151, 251 N.W.2d at 112 (stating that certification procedure is appropriate when "the record is sufficiently developed to present a substantive issue").
We are mindful of the countervailing concern that the rule may not be used to obtain answers to hypothetical questions. See id. But we do not believe that the certified question that we answer below is a hypothetical question. The word "hypothetical," in this context, means "[s]uppositional," "uncertain," "[c]onditional," or "contingent." The American Heritage Dictionary 684 (4th ed. 2007). The certified question that we answer below is not a hypothetical question because it arises from proceedings in which the district court was asked to rule on Knoch's and Watson's joint motion to dismiss. The parties developed an extensive factual record in connection with that motion. Our answer to the question of law should assist the district court in ruling on the motion.
Knoch's and Watson's second asserted ground for rephrasing the first certified questionthat it should be rephrased so that this court can provide a "yes" or "no" answeralso does not persuade us to rephrase the certified questions. It may be true that appellate courts generally prefer certified questions that may be answered with an unqualified "yes" or "no." See Minnesota Citizens Concerned for Life, Inc. v. Kelley, 698 N.W.2d 424, 429-30 (Minn.2005) (recognizing general policy of answering certified questions with unqualified yes or no); cf. In re UnitedHealth Group Inc. Shareholder Derivative Litig., 754 N.W.2d 544, 549-50 (Minn.2008) (reformulating question certified under Minn. Stat. § 480.065, subd. 3 (2006), in manner that did not allow unqualified yes or no answer). The authorities that Knoch and Watson cite for that proposition, however, are not cases arising under rule 28.03 of the rules of criminal procedure; rather, they arise in the context of civil cases. Even if we accept the principle that certified questions should be answered categorically, we can achieve that goal. The question certified by the district court, and the question that we answer, asks merely whether it ever is possible for the state to establish probable cause without obtaining a confirmatory laboratory test. An affirmative answer would mean that it is possible for the state to do so, depending on the facts and circumstances of a particular case. A negative answer would mean that it is impossible for the state to do so, which would mean that the state always must obtain a confirmatory laboratory test if the state wishes to resist a defendant's challenge to probable cause.
We believe that the questions certified by the district court should be reframed slightly for reasons independent of those identified by Knoch and Watson. Specifically, we believe that the issues raised by Knoch and Watson can be analyzed more easily if the two questions are merged into a single question, as is reflected above in our statement of the issue.

*177 B. Analysis of Reformulated Certified Question
Knoch and Watson argue that, in a prosecution for possession of a controlled substance, if a defendant moves to dismiss for lack of probable cause, the state may not rely on a field test to identify the alleged controlled substance. They argue that the state must, in all cases, perform a confirmatory laboratory test in order to have evidence sufficient to defeat the motion.
A motion to dismiss a criminal complaint for lack of probable cause may be brought pursuant to the following rule:
The court shall hear and determine all motions made by the defendant or prosecution, including a motion that there is an insufficient showing of probable cause to believe that the defendant committed the offense charged in the complaint, and receive such evidence as may be offered in support or opposition. Each party may cross-examine any witnesses produced by the other. A finding by the court of probable cause shall be based upon the entire record including reliable hearsay in whole or in part. Evidence considered on the issue of probable cause shall be subject to the requirements of Rule 18.06, subd. 1.
Minn. R.Crim. P. 11.03 (2009).[2] The last sentence of rule 11.03 permits the state to establish probable cause with certain forms of evidence that may not be admissible at trial. Minn. R.Crim. P. 18.06, subd. 1 (2009)[3]; see also State v. Ortiz, 626 N.W.2d 445, 451 n. 1 (Minn.App.2001), review denied (Minn. June 27, 2001).
The purpose and function of a motion to dismiss for lack of probable cause is
"to inquire concerning the commission of the crime and the connection of the accused with it in order that he may be informed of the nature and character of the offense with which he is charged; to determine if there is probable cause for believing the defendant guilty; and to fix bail. It is not necessary for the state to prove the defendant's guilt beyond a reasonable doubt. The state is not required to disclose at the preliminary hearing all of its evidence relating to the commission of the offense. It is required to submit only sufficient evidence to establish probable cause. It has been said that the test of probable cause is whether the evidence worthy of consideration, in any aspect for the judicial mind to act upon, brings the charge against the [defendant] within reasonable probability."
State v. Florence, 306 Minn. 442, 445-46, 239 N.W.2d 892, 896 (1976) (emphasis omitted) (quoting State ex rel. Hastings v. Bailey, 263 Minn. 261, 266, 116 N.W.2d 548, 551 (1962)); see also State v. Koenig, 666 N.W.2d 366, 372 (Minn.2003).
Knoch and Watson contend that, to defeat a motion to dismiss for lack of probable cause, the state must have evidence sufficient to support a conviction. Indeed, the supreme court recently stated, "A motion to dismiss for lack of probable cause should be denied where `the facts appearing in the record, including reliable hearsay, would preclude the granting of a motion for a directed verdict of acquittal if proved at trial.'" State v. Lopez, 778 N.W.2d 700, 703-04 (Minn.2010) (quoting *178 Florence, 306 Minn. at 459, 239 N.W.2d at 903). "A motion for judgment of acquittal is properly denied where the evidence, viewed in the light most favorable to the State, is sufficient to sustain a conviction." State v. Simion, 745 N.W.2d 830, 841 (Minn.2008). But a district court must "order the entry of a judgment of acquittal of one or more offenses charged in the tab charge, indictment or complaint if the evidence is insufficient to sustain a conviction of such offense or offenses." Minn. R.Crim. P. 26.03, subd. 17(1) (2009)[4]; see also State v. Slaughter, 691 N.W.2d 70, 74-75 (Minn.2005).
To convict a defendant of possession of a controlled substance, the state must prove that the defendant possessed a substance that is a controlled substance. State v. Olhausen, 681 N.W.2d 21, 28 (Minn.2004); State v. Vail, 274 N.W.2d 127, 134 (Minn.1979). If "the identification of the drug is in question, the sufficiency of the evidence is examined on a case-by-case basis." Olhausen, 681 N.W.2d at 29. Thus, whether the evidence is sufficient to support a conviction, or whether the evidence is sufficient to establish probable cause, necessarily depends on the particular facts of a given case. Id.; Vail, 274 N.W.2d at 134; In re Welfare of J.R.M., 653 N.W.2d 207, 210 (Minn.App.2002).
In light of the fact-intensive, case-by-case nature of a probable-cause determination, Knoch and Watson have a challenging task in seeking to establish a bright-line rule. They ask this court to hold, despite the caselaw requiring a case-by-case approach, that a field test that indicates the presence of a controlled substance never can be sufficient to establish probable cause or to establish guilt.
In support of their argument, Knoch and Watson rely primarily on Vail, in which the supreme court reversed a defendant's conviction for sale and possession of marijuana after concluding that the evidence was insufficient to identify the substance as marijuana beyond a reasonable doubt. 274 N.W.2d at 129, 134. The supreme court reviewed findings of fact made by the district court after a bench trial. Id. at 134. The district court's findings analyzed extensive scientific evidence concerning the tests used by the statea positive field test and two positive laboratory testswhich were attacked in various ways by an expert retained by the defendant. Id. at 130, 133. The district court found that the two laboratory tests were "only screening tests not adequately specific to identify marijuana." Id. at 130. The district court found that another test "is capable of identifying marijuana beyond a reasonable doubt, but that test was not used in this case." Id. Nonetheless, the district court found the defendant guilty by relying on evidence of a non-scientific nature, from which it drew "`inferences identifying the substance'" as marijuana. Id. at 133. The supreme court reversed the district court's finding of guilt, reasoning that "the additional considerations relied upon by the trial court," i.e., the non-scientific evidence, were not "sufficient to support its determination of guilt." Id. at 134.
Knoch and Watson contend that Vail established the principle that a defendant cannot be convicted of possessing a controlled substance unless the state has sufficient scientific evidence to prove the identity of the substance. But that statement begs the question of what evidence is sufficient. Knoch and Watson point to evidence *179 in the district court record to the effect that a laboratory test for methamphetamine is more reliable than a field test. But even so, the Vail opinion, which concerned marijuana, did not establish a bright-line rule that applies to a case involving methamphetamine; there is no rule of law arising from Vail that would require a district court to grant a motion for judgment of acquittal if the state's scientific evidence was limited to the result of a NIK Test U. In fact, the Vail court expressly stated the contrary proposition: "We have not prescribed minimum evidentiary requirements in identification cases, preferring to examine the sufficiency of the evidence on a case-by-case basis." 274 N.W.2d at 134. Thus, Vail does not forbid the state from establishing probable cause with a field test of an alleged controlled substance, without a confirmatory laboratory test.
Knoch and Watson also rely, to a lesser extent, on State v. Robinson, 517 N.W.2d 336 (Minn.1994). In that case, the defendant was convicted of the offense of selling 10 grams or more of a cocaine mixture. Id. at 337. The defendant possessed 13 packets of cocaine, which weighed a total of 16.7 grams. Id. at 337-38. A chemist combined the contents of six or seven of the packets and tested the resulting mixture. Id. at 338. The supreme court inferred that less than 10 grams of the mixed substance was tested and concluded that the evidence was "insufficient to establish the total weight required of the mixture containing a controlled substance." Id. at 339. Contrary to Knoch's and Watson's argument, Robinson also does not establish any evidentiary standard or rule of law that forbids the state from establishing probable cause with a field test of an alleged controlled substance without a confirmatory test.
The supreme court's subsequent opinion in Olhausen also is inconsistent with Knoch's and Watson's argument. The defendant in that case was convicted of three offenses relating to the possession and attempted sale of methamphetamine based solely on circumstantial evidence. Olhausen, 681 N.W.2d at 22-23, 25. The state was unable to conduct any scientific testing on the alleged methamphetamine because the defendant escaped from the scene of a controlled buy with the alleged methamphetamine in his possession. Id. at 24-25. The state introduced other evidence of the defendant's possession of methamphetamine, including the testimony of an undercover officer concerning the defendant's intention to sell one pound of methamphetamine and the defendant's possession of a package weighing approximately one pound. Id. at 26. The supreme court upheld the jury's verdict of guilty, distinguishing Vail and Robinson in the process. Id. at 23-24, 27-29. The supreme court reiterated that the sufficiency of the evidence of identification of a controlled substance is a case-by-case matter that is best resolved by a factfinder. Id. at 29; see also J.R.M., 653 N.W.2d at 210-11 (holding that state proved defendant possessed marijuana based on circumstantial evidence, without any laboratory tests).
We need not apply the above-stated principles to the facts of these consolidated cases because they are before us on a certified question. Nonetheless, the district court proceedings in these cases illustrate why the state is not foreclosed from establishing probable cause with evidence of a field test. The state presented evidence that the field test used in these cases, the NIK Test U, is reliable enough to establish probable cause. The district court considered the prospect of a false positive test but proceeded to find, based on evidence presented at the hearing, that *180 the probability of a false positive test result is sufficiently low.[5] After carefully considering the evidence, the district court concluded that a jury could infer from the facts of both cases, "including the NIK Test U results, that the substance in question was in fact methamphetamine." Specifically, the district court stated:
The residue in a methamphetamine pipe found in an area with other drug paraphernalia, combined with a properly-conducted and reliable NIK Test U that indicates the presence of a secondary amine, presents a strong likelihood that the substance is in fact methamphetamine. Likewise, the presence of a white crystalline substance in a baggie that looks like methamphetamine and tests positive for the presence of a secondary amine is quite likely to actually be methamphetamine.
These findings easily satisfy the Florence standard, which asks only "whether the evidence worthy of consideration, in any aspect for the judicial mind to act upon, brings the charge against the [defendant] within reasonable probability." 306 Minn. at 446, 239 N.W.2d at 896 (emphasis omitted) (quotation omitted).
In sum, we reiterate that a probable cause determination is a fact-intensive determination that must be made on a case-by-case basis. Olhausen, 681 N.W.2d at 29; Vail, 274 N.W.2d at 134. We therefore reject Knoch's and Watson's request that we impose a bright-line rule forbidding the use of a field test of a controlled substance to establish probable cause. Nothing in this opinion, however, precludes a defendant from challenging the existence of probable cause by introducing evidence of a confirmatory test indicating that a particular substance is not a controlled substance. See State v. Rud, 359 N.W.2d 573, 579 (Minn.1984) ("Nothing we say today prevents a defendant from taking the stand at the omnibus hearing and denying his guilt or from otherwise producing witnesses whose testimony, if believed, would exonerate him.").

DECISION
In a prosecution for possession of a controlled substance, the state may, depending on the facts and circumstances of a particular case, establish probable cause based on evidence of a positive field test of a substance alleged to be a controlled substance, without evidence of a confirmatory test of the substance.
Certified question answered in the affirmative.
NOTES
[1] After the district court's ruling, Minn. R.Crim. P. 28.03 was amended for style, effective January 1, 2010.
[2] After the district court's ruling, Minn. R.Crim. P. 11.03 was amended for style and renumbered Minn. R.Crim. P. 11.04, subd. 1, effective January 1, 2010.
[3] After the district court's ruling, Minn. R.Crim. P. 18.06 was amended for style and renumbered Minn. R.Crim. P. 18.05, effective January 1, 2010.
[4] After the district court's ruling, Minn. R.Crim. P. 26.03, subd. 17(1) was amended for style and renumbered Minn. R.Crim. P. 26.03, subd. 18(1)(a), effective January 1, 2010.
[5] In the district court, Knoch and Watson attempted to attack the reliability of the NIK Test U by showing that, in practice, field tests sometimes lead to false positive test results. Knoch and Watson offered evidence in support of this argument after the evidentiary hearing, when they moved for reconsideration and submitted 32 pages of documents relating to seven criminal prosecutions in the Minnesota state courts in which a field test purportedly generated a false positive test result. Knoch and Watson did not offer any testimony to explain the circumstances of those seven cases or any written statements in lieu of testimony. The state responded by arguing that the documents were submitted too late, did not have probative value, and did not establish that the NIK Test U is unreliable. The district court did not analyze the documents and did not make any ruling as to whether they were properly before the court. It appears that only two of those seven cases may involve a NIK Test U for methamphetamine, which was the subject of the evidentiary hearing in the district court. Even if we assume that the late-submitted documents may be considered, they do not affect the soundness of the district court's ultimate determination that the NIK Test U results are reliable enough to support findings of probable cause in these cases.