*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1855**

Jose Manuel Flores, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 27, 2015
Affirmed
Reilly, Judge**

Dakota County District Court
File No. 19HA-CR-08-156

Cathryn Middlebrook, Chief Appellate Public Defender, Carol Comp, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Chip Granger, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

**U N P U B L I S H E D  O P I N I O N**

**REILLY**, Judge

Appellant Jose Manuel Flores seeks postconviction relief based on deficiencies at the Saint Paul Police Department Crime Lab (SPPDCL). On appeal, appellant argues

that he is entitled to withdraw his guilty plea to a third-degree controlled-substance crime due to newly discovered evidence, a *Brady* violation, due-process violations, manifest injustice, and ineffective assistance of counsel. He also requests an evidentiary hearing. We affirm.

**FACTS**

On March 7, 2008, at approximately 2:00 a.m., an Inver Grove Heights police officer observed appellant pulling out of a bar parking lot and subsequently drive over the fog line multiple times. The officer stopped the vehicle and identified the driver as appellant. While speaking with appellant, the officer witnessed signs of intoxication and asked appellant to perform field sobriety tests. Appellant failed the tests and a preliminary breath test revealed an alcohol concentration over the legal limit.

After placing appellant under arrest, the officer found plastic baggies containing a white powdery substance in appellant's pant pockets. A Dakota County Drug Task Force agent conducted a preliminary test, and the substance tested positive for cocaine.

The state charged appellant with a second-degree controlled-substance (cocaine possession) crime, in violation of Minn. Stat. § 152.022, subd. 2(1) (2006), possession of a small amount of marijuana in a motor vehicle, in violation of Minn. Stat. § 152.027, subd. 3 (2006), and fourth-degree driving while impaired, in violation of Minn. Stat. § 169A.20, subd. 1(5) (2006). On July 16, 2008, appellant pleaded guilty to an amended third-degree controlled-substance (cocaine possession) crime and driving while impaired. The district court sentenced appellant to a 24-month prison sentence.

Four years later, appellant petitioned for postconviction relief based on the widespread deficiencies in the controlled-substance testing performed by the SPPDCL and requested an evidentiary hearing. In his postconviction petition, appellant maintained that he was entitled to withdraw his guilty plea based on newly discovered evidence, *Brady* violations, due-process concerns, manifest injustice, and ineffective assistance of counsel. The postconviction court summarily denied appellant's petition and his request for an evidentiary hearing, concluding that his petition was time-barred and that appellant failed to show an exception to the time bar.

## D E C I S I O N

### I.

A person convicted of a crime who claims that his conviction or sentence violated his constitutional rights may file a petition for postconviction relief. Minn. Stat. § 590.01, subd. 1 (2014). The petitioner has the burden to prove the facts alleged in his petition by a fair preponderance of the evidence. Minn. Stat. § 590.04, subd. 3 (2014). "To meet that burden, a petitioner's allegations must be supported by more than mere argumentative assertions that lack factual support." *Powers v. State*, 695 N.W.2d 371, 374 (Minn. 2005). The district court may deny a petition for postconviction relief without an evidentiary hearing if the files and records conclusively show that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014).

We review the denial of postconviction relief for an abuse of discretion. *Gulbertson v. State*, 843 N.W.2d 240, 244 (Minn. 2014). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against

logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). In reviewing a postconviction court's decision to deny relief, issues of law are reviewed de novo and issues of fact are reviewed for sufficiency of the evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

A petition for postconviction relief must be filed within two years of the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a). A district court may consider a petition filed after the two-year limit, however, if it satisfies one of several statutory exceptions. *Id.*, subd. 4(b) (listing five exceptions). If an exception applies, the petition must be filed within two years of the date the claim arises. *Id.*, subd. 4(c). A claim arises when the petitioner "knew or should have known that the claim existed." *Sanchez v. State*, 816 N.W.2d 550, 552 (Minn. 2012).

## A. Newly Discovered Evidence Exception

Appellant argues that the postconviction court abused its discretion when it denied his postconviction petition where he alleged that the discovery of the SPPDCL deficiencies satisfy the newly discovered evidence exception to the two-year time bar. A defendant is entitled to postconviction relief based on newly discovered evidence if the defendant proves

> that the evidence (1) is newly discovered; (2) could not have been ascertained by the exercise of due diligence by the petitioner or the petitioner's attorney within the 2-year time-bar for filing a petition; (3) is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) establishes by the clear and convincing standard that

4

petitioner is innocent of the offenses for which he was convicted.

*Riley*, 819 N.W.2d at 168. "All five criteria must be satisfied to obtain relief." *Id.*

In this case, the postconviction court found that appellant's "attorney could have discovered the problems [with the SPPDCL] by obtaining documents and reports regarding the lab's procedures and protocols for testing controlled substances," and that "[appellant] has not alleged that the substance he possessed and later pled guilty with regard to was not cocaine . . . [and] without any assertion that the crime lab erred in his particular case."

This court recently addressed a similar issue in *Roberts v. State*, 856 N.W.2d 287 (Minn. App. 2014), *review denied* (Jan. 28, 2015) (*Roberts I*). In *Roberts I*, we concluded that appellant failed to show that he could not have discovered the issues with the SPPDCL's testing protocols through due diligence. 856 N.W.2d at 291. We reasoned:

> [Appellant] does not claim that he made any effort to investigate the validity of the test results. Nor does he claim that anyone prevented him from doing so. Instead, he merely asserts that the deficiencies in the crime lab's procedures could not have been discovered with due diligence because no one had reason to suspect problems at the crime lab. That assertion is belied by [appellant's] postconviction submissions, which show that the defendant in the 2012 Dakota County case discovered the deficiencies.

*Id.* In this case, the record does not demonstrate that appellant made any effort to investigate or question the SPPDCL's test results, indicating that he did not exercise due diligence in verifying the validity of the test results before pleading guilty.

5

As to the fifth prong—evidence establishing appellant's innocence—appellant contends that "[w]ithout a valid, reliable laboratory analysis, the State cannot meet its burden of proving that the item at issue contained controlled substances." To convict a defendant of possession of a controlled substance, the state must prove the identity of the substance possessed. *State v. Vail*, 274 N.W.2d 127, 134 (Minn. 1979). Where the identity of the substance is in question, the sufficiency of the state's evidence is examined on a case-by-case basis. *State v. Olhausen*, 681 N.W.2d 21, 26-29 (Minn. 2004) (determining that the circumstantial evidence was sufficient to prove that the defendant possessed and sold methamphetamine despite the fact that methamphetamine was never found or tested).

We also determined in *Roberts I* that the petitioner could not satisfy the fifth prong because the new evidence did not prove that the substance he possessed was not cocaine. 856 N.W.2d at 291-92. We concluded that the nonscientific evidence of guilt—the complaint's description of the officer's suspicion that the substance was cocaine based on appearance and Roberts's attempt to run from the officer—was "fatal to Roberts's attempt to establish actual innocence based on speculation regarding the validity of the test results in his case." *Id.* at 292.

In *State v. Knoch*, 781 N.W.2d 170, 179 (Minn. App. 2010), *review denied* (Minn. June 29, 2010), this court held that the state may establish probable cause to support the prosecution for possession of a controlled substance based on a field test and without evidence of a confirmatory test. In *Knoch*, an officer used a Narcotic Identification Kit (NIK) test to determine whether methamphetamine was present on a pipe and, after the

pipe tested positive, no additional testing was performed. *Id.* at 172-73. In rejecting the argument that this court should impose a bright-line rule forbidding the use of a field test to establish probable cause, this court reiterated that the probable cause determination is fact intensive and made on a case-by-case basis. *Id.* at 180.

Here, the complaint stated that the officer found a "plastic baggie containing a white powdery substance that the officer believed to be a controlled substance," and that an agent with the Dakota County Drug Task Force used a NIK test on the substance and it tested positive for cocaine. Furthermore, at the plea hearing, the defense attorney asked appellant if he had any "reason to dispute the accuracy of those tests for the cocaine or for the urine," and appellant replied that he did not have reason to dispute the testing. Thus, based on the officer's observations, the positive NIK result, and appellant's admission the evidence is sufficient to establish that the substance possessed by appellant was cocaine, and appellant cannot establish actual innocence. Accordingly, appellant cannot satisfy the second or fifth prongs of the newly discovered evidence exception.

### B. *Brady* Violation

Appellant claims that the SPPDCL's faulty testing methods were suppressed by the state. "[T]he suppression by the State, whether intentional or not, of material evidence favorable to the defendant violates the constitutional guarantee of due process." *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963)). A *Brady* violation exists if "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice

7

to the accused resulted." *State v. Brown*, 815 N.W.2d 609, 622 (Minn. 2012). The state's suppression of evidence results in prejudice to the accused if the evidence is "material" in that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Walen*, 777 N.W.2d at 216. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.*

The district court rejected appellant's contention that a *Brady* violation occurred under the second factor, stating "neither the police nor prosecutors knew that the lab was not following the standard procedures." We agree. Under the second prong of the *Brady* analysis, appellant has not alleged any facts indicating that the state knew of the SPPDCL's problems at the time of appellant's plea. And appellant has not alleged facts which demonstrate that the evidence regarding the SPPDCL testing procedures would have altered the outcome of the trial. The district court did not abuse its discretion by denying appellant postconviction relief based on a *Brady* violation.

C.     **Due-Process Violation**

Appellant argues that he is entitled to withdraw his plea because his right to due process was violated when the state used unreliable scientific evidence from the SPPDCL. The district court rejected his argument, concluding "there is no legal precedent in Minnesota that allows for post-conviction relief on the basis of a due-process violation where a defendant pled guilty and later learned" of crime lab deficiencies. Moreover, the district court found that appellant could not prove that the state "acted in bad faith regarding the testing of the controlled substance he had

8

possessed." Appellant claims that the district court erred when it determined that appellant had to prove that the state acted in bad faith because his claim is one of procedural due process and not substantive due process.

Through their respective due-process clauses, both the United States and Minnesota Constitutions require that an individual receive "adequate notice and an opportunity to be heard before being deprived of life, liberty, or property." *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 911 (Minn. App. 2010). We review the procedural due process afforded to a party de novo. *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 304 (Minn. App. 2007). "To determine whether an individual's right to procedural due process has been violated, a reviewing court must first determine whether a protected liberty or property interest is implicated and then determine what process is due by applying a balancing test." *State v. Ness*, 819 N.W.2d 219, 225 (Minn. App. 2012), *aff'd*, 834 N.W.2d 177 (Minn. 2013).

Appellant relies on *State v. Schwartz*, 447 N.W.2d 422, 427 (Minn. 1989), to support his proposition that scientific evidence may implicate liberty concerns. *Schwartz* addressed due-process concerns regarding the reliability of DNA testing and its use at trial. *Id.* In addressing whether due-process concerns arise when relying on DNA testing, the supreme court stated that

> the fair trial and due process rights are implicated when data relied upon by a laboratory in performing tests are not available to the opposing party for review and cross examination. Under our broad discovery rules, defense counsel has the right to inspect and reproduce any results or reports of physical or mental examinations, scientific tests,

9

experiments or comparisons made in connection with the particular case.

*Id.* Therefore, in order to ensure a fair trial, the data, methodology, and actual results must be made available for independent review by the opposing party. *Id.* at 427.

The record shows that appellant never requested the test results or cross-examined the individual who performed the testing prior to pleading guilty, nor does he allege that he was denied an opportunity for independent testing. And appellant has not presented any evidence suggesting that the testing of the controlled substance found on him was not cocaine. *See State v. Rader*, 597 N.W.2d 321, 324 (Minn. App. 1999) (holding that driver's procedural and substantive due-process rights were not violated when he failed to produce any evidence that his breath test was manipulated and because he failed to show any intended, direct, and personal harm). Here, the process required before depriving appellant of his liberty interest was a fair trial. Appellant waived his right to trial and, along with it, the right to cross-examine witnesses and challenge the strength of the evidence used against him. Accordingly, appellant was not deprived of due process; rather, he waived procedural safeguards in exchange for pleading guilty to a lesser charge.

### D. Manifest Injustice

"At any time the court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice exists if a guilty plea is not valid, and a guilty plea must be accurate, voluntary, and

10

intelligent to be valid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). Appellant argues that his guilty plea was not accurate, voluntary, or intelligent. The district court found that appellant presented "no evidence that his guilty plea was inaccurate, involuntary, or unintelligent" and denied appellant relief on this basis.

     1.    <u>Accuracy</u>

A plea must be supported by a proper factual basis to be accurate. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). A proper factual basis is established when there are sufficient facts on the record to support a conclusion that the defendant's conduct falls within the charge to which he is pleading guilty. *Munger v. State*, 749 N.W.2d 335, 337-38 (Minn. 2008) (stating that the requirement that a plea be accurate "protects the defendant from pleading guilty to a more serious offense than he could properly be convicted of at trial"). Appellant claims that the prosecution did not provide an adequate factual basis for his plea. In making his inadequate-basis claim, appellant contends that his statements are not a "satisfactory substitute for a reliable laboratory test" and that the unreliable SPPDCL testing contradicts any previous statement or reports that purport to identify the substances in appellant's case.

During the plea hearing, appellant did not dispute that the "substance was cocaine when [he] had it," and appellant stated that he believed that the substance was cocaine. He confirmed he had no reason to dispute the accuracy of the positive test result. And the NIK test detected the presence of cocaine. Again, appellant does not contend that the white powdery substance he possessed was not cocaine, and he has not produced

11

evidence that the SPPDCL's deficiencies influenced the testing in his case. Appellant's guilty plea had a proper factual basis.

2.    Voluntary

The requirement that a plea be voluntary "ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96 (stating that "[w]hether a plea is voluntary is determined by considering all relevant circumstances"). Appellant argues that his plea was involuntary because it was improperly induced by his belief that "a credible scientific lab had tested the substance, and it tested positive as a controlled substance." During the plea hearing, appellant affirmed that he believed that the substance found on him was cocaine. Thus, the SPPDCL lab result did not improperly pressure appellant to plead guilty.

3.    Intelligence

The requirement that a plea be intelligent "ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Id.* Appellant argues that his plea was unintelligent because he was unaware of the SPPDCL's deficiencies when he pleaded and did not know how to, or understand, his right to challenge the test results.

During the plea hearing, appellant affirmed that he reviewed the plea petition with his attorney, that he understood he was giving up the right to a trial where he would be presumed innocent and the burden would be upon the state to prove his guilt beyond a reasonable doubt, that he understood and was giving up his rights to "cross examine [the state's] witnesses and ask them questions," and to contest the evidence. Appellant's

12

choice to not challenge the state's evidence and witnesses at trial does not impact the intelligence of his guilty plea. *See Roberts I*, 856 N.W.2d at 293 ("We recognize that the information regarding the crime lab could have influenced Roberts's decision to waive his right to a trial and plead guilty. But it is not fundamentally unfair to hold Roberts accountable for his choice to accept the state's scientific evidence at face value . . . ."). Therefore, appellant's guilty plea was valid.

### E.     Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (noting that "counsel's performance is presumed to be reasonable"). A reviewing court need not address both prongs of the *Strickland* test if one is dispositive. *Hawes v. State*, 826 N.W.2d 775, 783 (Minn. 2013).

Appellant claims his attorney was ineffective because he did not demand and review the underlying SPPDCL file in his case. The district court concluded that appellant received effective assistance of counsel because "no other attorney had

13

discovered the existence of any problems with the crime lab" and that "[appellant's] attorney performed his duties like the majority of attorneys who represented defendants whose alleged drugs were tested by the crime lab." And the district court noted that appellant is "not suggesting now that he ever told his lawyer that [the] substance was anything other than a controlled substance."

Moreover, contrary to appellant's argument, his attorney's decision to not inquire into or challenge the validity of the SPPDCL test results may be viewed as an unreviewable strategic choice. *See Anderson v. State*, 830 N.W.2d 1, 10 (Minn. 2013) (stating "[w]e will generally not review an ineffective-assistance-of-counsel claim that is based on trial strategy" and that "[t]he extent of trial counsel's investigation is considered part of trial strategy"). Appellant relies on *State v. Nicks*, 831 N.W.2d 493 (Minn. 2013), to support his argument that his counsel's failure to challenge the lab results is reviewable trial strategy. But *Nicks* does not establish that appellant's counsel's failure to inquire into the validity of the SPPDCL results was not unreviewable trial strategy. In *Nicks*, the defendant's attorney failed to obtain the decedent's phone records when the phone records were "very relevant" to refuting the murder charge. *Id.* at 506-07. In rejecting the contention that the defendant's attorney's failure to obtain the records amounted to unreviewable trial strategy, the supreme court noted that defendant's attorney did not make a decision to not pursue the records. *Id.* at 507. Rather, the attorney "inexplicably took no further action" after he did not receive the requested phone records when he selected a defense theory requiring the records. *Id.*

Unlike *Nicks*, there is no evidence in the record that appellant's attorney initiated or pursued a theory or defense involving the SPPDCL results. Rather, appellant's attorney made a deliberate decision to pursue a plea agreement with a reduced controlled-substance charge. Thus, appellant fails to demonstrate that his counsel performed below an objective standard of reasonableness and that a reasonable probability exists that the outcome would have been different but for counsel's actions.

## II.

Lastly, appellant argues that the district court abused its discretion when it denied his request for an evidentiary hearing based on the newly discovered evidence and interest-of-justice exceptions.[1] When a petition for postconviction relief is filed, "the court shall promptly set an early hearing on the petition and response thereto, and promptly determine the issues" unless the "petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1; *see Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). The threshold standard for an evidentiary hearing is lower than that for a new trial; "[a]ny doubts about whether to conduct an evidentiary hearing should be resolved in favor of the defendant seeking relief." *Nicks*, 831 N.W.2d at 504. We review the district court's decision on whether to hold an evidentiary hearing for an abuse of discretion. *Riley*, 819 N.W.2d at 167.

---

[1] Appellant also urges this court to adopt other jurisdictions' responses to crime lab testing deficiencies. It is not the function of the court to implement procedures to address the SPPDCL defects. *See LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn. App. 2000) (stating that "[b]ecause this court is limited in its function to correcting errors it cannot create public policy"), *reviewed denied* (Minn. May 16, 2000).

Appellant argues that this court should not consider *Roberts I* because, in *Roberts I*, this court found that Roberts could not demonstrate that the information regarding the crime lab could have been discovered through the exercise of due diligence. Appellant relies on an affidavit filed by attorney Lauri Traub to prove that the crime lab deficiencies could have been discovered through the exercise of due diligence. We are not persuaded.

First, the Minnesota Supreme Court has declined to review *Roberts I*. Thus, this denial makes *Roberts I* controlling law. *See State v. Peter*, 825 N.W.2d 126, 129 (Minn. App. 2012) ("[T]he district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals." (quotation omitted), *review denied* (Minn. Feb. 27, 2013)). Second, appellant argues that an evidentiary hearing is necessary because the *Roberts I* court did not consider Ms. Traub's affidavit which provides additional evidence regarding the issue of due diligence. Ms. Traub's affidavit states that she was able to discover the problems with the crime lab because of her "specialized scientific training." And, at oral argument, appellant's counsel argued that this training went "above and beyond" that of the normal defense attorney, thus showing that the crime lab deficiencies could not be discovered through the exercise of due diligence.

Even if we were to conclude that the crime lab deficiencies could not have been ascertained by the exercise of due diligence within the two-year time period by an individual without specialized training, this evidence still cannot establish, under the clear-and-convincing standard, that appellant is innocent. Like in *Roberts I*, appellant does not offer evidence regarding the chemical composition of the substance in the case. 856 N.W.2d at 292-93. Appellant never challenged the lab results or claimed that the

16

substance he possessed was not cocaine. Instead, he pleaded guilty to the charged offense, admitting that the substance he sold was cocaine. Appellant has also failed to make any connection between the problems at the SPPDCL in 2012 and the testing of the evidence in his case from 2008. Accordingly, the postconviction court did not abuse its discretion by denying appellant's request for an evidentiary hearing.

**Affirmed.**