*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1478**

State of Minnesota,
Respondent,

vs.

Ely Ovis Emmanuel Ana El Sabahot,
Appellant.

**Filed December 5, 2016
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Crow Wing County District Court
File Nos. 18-CR-15-193, 18-CR-15-410

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, David F. Hermerding, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Ely Ovis Emmanuel Ana El Sabahot pleaded guilty pursuant to a plea agreement to a drug-possession charge and a charge of assaulting a peace officer. On appeal, he argues

that his guilty pleas are invalid because they are not supported by proper factual bases. We conclude that a proper factual basis exists for Sabahot's plea to the drug-possession charge. But we conclude that a proper factual basis does not exist for Sabahot's plea to assaulting a peace officer. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

This appeal arises from two incidents that occurred in early 2015. On January 13, 2015, Brainerd police officers conducted a traffic stop of a vehicle. Before the vehicle came to a stop, the officers saw the front-seat passenger, who later was identified as Sabahot, throw several items out the window. The officers later found the items, which included a glass pipe. The officers conducted a field test of the pipe with a Narcotics Inventory Kit (NIK), which indicated the presence of methamphetamine residue. The state charged Sabahot with a fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014); possession of drug paraphernalia, in violation of Minn. Stat. § 152.092 (2014); and possession of an open container of alcohol, in violation of Minn. Stat. § 169A.35, subd. 3 (2014).

Two weeks later, on January 27, 2015, law-enforcement officers arrested Sabahot on suspicion of violating a predatory-registration requirement. Sabahot was injured during the arrest. While receiving treatment in a local hospital, Sabahot became agitated and spit on a deputy's face. The state charged Sabahot with felony fourth-degree assault of a peace officer, in violation of Minn. Stat. § 609.2231, subd. 1 (2014), and knowingly violating the

predatory-registration requirement or intentionally providing false information, in violation of Minn. Stat. § 243.166, subd. 5(a) (2014).

In June 2015, the state and Sabahot entered into a plea agreement to resolve the charges in both cases. Sabahot agreed to plead guilty to the drug-possession charge in the first case and the charge of assaulting a peace officer in the second case. In exchange, the state agreed to dismiss all remaining charges in both cases.

At a plea hearing concerning both cases, Sabahot engaged in a colloquy with his attorney in which he provided some but not all of the facts necessary to support his guilty pleas. With respect to the drug-possession charge, Sabahot admitted that he was a passenger in a vehicle that was stopped by police officers, but he did not admit to throwing items out the window or that the items contained controlled substances. Sabahot acknowledged that, if the case were to go to trial, one or more police officers would testify that they saw Sabahot throw a glass pipe out a window and that methamphetamine residue was on the glass pipe. Sabahot acknowledged that the state had sufficient evidence to cause a jury to convict him of that charge if the case went to trial.

With respect to the charge of assaulting a peace officer, Sabahot admitted that he had been arrested and was brought to a hospital. But he made no admissions concerning what occurred at the hospital, claiming that he could not remember because of his condition at that time. Sabahot acknowledged that, if the case were to go to trial, an officer would testify that Sabahot became agitated and that "some spit came out of [his] mouth and hit [the deputy]." Sabahot acknowledged that the state had sufficient evidence to cause a jury to convict him of that charge if the case went to trial.

3

The district court accepted both guilty pleas and dismissed the remaining charges. The district court imposed concurrent prison sentences of 25 months and 22 months but stayed execution and placed Sabahot on supervised probation for five years. Sabahot appeals.

## D E C I S I O N

Sabahot argues that both of his guilty pleas are invalid. He did not move to withdraw his guilty pleas in the district court or otherwise argue to the district court that his pleas are invalid. Nonetheless, the caselaw permits him to make the argument for the first time on appeal from his convictions and sentences. *See State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003); *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989).

A guilty plea is invalid if it is not "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). The supreme court has explained each of the three requirements:

> The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial. Other possible benefits of the accuracy requirement include assisting the court in determining whether the plea is intelligently entered and facilitating the rehabilitation of the defendant. The purpose of the voluntariness requirement is to insure that the defendant is not pleading guilty because of improper pressures. The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea.

*State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). If a guilty plea fails to meet any of these three requirements, it is invalid. *State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007).

4

This court applies a *de novo* standard of review to the validity of a guilty plea. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

Sabahot argues that his guilty pleas are invalid because they are not accurate. A guilty plea is not accurate if it is not supported by a proper factual basis. *Ecker*, 524 N.W.2d at 716. In general, a proper factual basis exists if there are "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Iverson*, 664 N.W.2d at 349 (quoting *Kelsey v. State*, 298 Minn. 531, 532, 214 N.W.2d 236, 237 (1974)). In a conventional guilty plea, the defendant's admissions provide the factual basis that supports the defendant's admission of guilt. *Ecker*, 524 N.W.2d at 716.

This appeal does not arise from conventional guilty pleas because Sabahot's admissions at the plea hearing did not, by themselves, establish all elements of the charged offenses. At the plea hearing, the parties and the district court understood that Sabahot was entering so-called *Alford* pleas to both charges. In an *Alford* plea, a defendant maintains his innocence but nonetheless pleads guilty because he believes that the state has sufficient evidence and is likely to obtain a conviction if the case were to go to trial. *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)); *see also Doe 136 v. Liebsch*, 872 N.W.2d 875, 879 (Minn. 2015). Because Sabahot disputed the state's evidence concerning the drug-possession charge, it is proper to characterize his plea to that charge as an *Alford* plea. *See Theis*, 742 N.W.2d at 647-48. But Sabahot did not dispute the state's evidence concerning the assault charge; rather, he stated at the plea hearing that he had no recollection of the incident. Sabahot's plea to the

5

assault charge is properly characterized as a *Norgaard* plea, which may be entered if a defendant does not admit the facts necessary for guilt because he lacks a recollection of the relevant facts. *See State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 111-13, 110 N.W.2d 867, 871-72 (1961).

A challenge to the accuracy of an *Alford* plea is analyzed in the same manner as a challenge to the accuracy of a *Norgaard* plea. *See Ecker*, 524 N.W.2d at 717; *see also Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009), *review denied* (Minn. Apr. 21, 2009). A defendant entering an *Alford* plea or a *Norgaard* plea must "agree[] that evidence the State is likely to offer at trial is sufficient to convict" and should "specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty." *Theis*, 742 N.W.2d at 649; *Ecker*, 524 N.W.2d at 716-17. If the defendant has made the required agreements and acknowledgements, the district court must independently determine whether the factual basis indicates a strong probability that a jury would find the defendant guilty. *Theis*, 742 N.W.2d at 649; *Ecker*, 524 N.W.2d at 716-17; *see also State v. Johnson*, 867 N.W.2d 210, 214-17 (Minn. App. 2015), *review denied* (Minn. Sept. 29, 2015).

## A. Drug-Possession Charge

Sabahot argues that his *Alford* plea to the drug-possession charge is lacking a factual basis as to whether the glass pipe contained residue of a controlled substance. Specifically, he contends that a NIK test result is incapable of establishing that the substance on the glass pipe is a controlled substance.

6

Sabahot relies primarily on *State v. Vail*, 274 N.W.2d 127 (Minn. 1979), and *State v. Robinson*, 517 N.W.2d 336 (Minn. 1994). He contends that *Vail* and *Robinson* have "recognized that a NIK test merely provides a preliminary result, which is unreliable by itself and must be confirmed by further scientific testing." But the supreme court actually made a contrary statement in *Vail*: "We have not prescribed minimum evidentiary requirements in identification cases, preferring to examine the sufficiency of the evidence on a case-by-case basis." 274 N.W.2d at 134. More recently, the supreme court has reiterated that the question whether a substance possessed by a defendant is a controlled substance must be determined "on a case-by-case basis." *State v. Olhausen*, 681 N.W.2d 21, 26 (Minn. 2004). In *State v. Knoch*, 781 N.W.2d 170 (Minn. App. 2010), this court held that, for purposes of determining the existence of probable cause, there is no "bright-line rule forbidding the use of a field test of a controlled substance." *Id.* at 180.

In the context of determining the existence of a proper factual basis for an *Alford* plea, the key question is whether "the evidence the State would likely offer . . . is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty." *Theis*, 742 N.W.2d at 649. It is important to emphasize that the inquiry is not limited to the evidence that is recited at the plea hearing; rather the inquiry considers "the evidence the State would likely offer" if the case were to go to trial. *See id.* In addition, a defendant's guilty plea may be accepted based not only on the specific facts admitted at a plea hearing but also the facts that may be inferred from the admitted facts. *See Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016). In this case, the state gave notice to Sabahot that the "[s]uspected controlled substances will be submitted for scientific testing to the Minnesota Bureau of

7

Criminal Apprehension upon notice that the matter has been set for Jury Trial." Thus, in accepting the plea agreement, the district court was permitted to consider the likelihood that the state would introduce evidence at trial of a positive result of a laboratory test, and we are permitted to view the record in the same manner. The likelihood of evidence of a positive laboratory test result is enhanced by the fact that the substance being tested was found on a glass pipe. *See Nelson*, 880 N.W.2d at 861.

Thus, Sabahot's *Alford* plea to the drug-possession charge is not lacking a proper factual basis on the ground that, at the time of the plea hearing, the state had conducted a NIK field test of the substance on the glass pipe but had not yet conducted a laboratory test.

### B. Assault Charge

Sabahot also argues that his plea to the charge of felony fourth-degree assault of a peace officer, which we have characterized as a *Norgaard* plea, is lacking a factual basis. Specifically, he contends that he could not have committed an assault by spitting on an officer's face because, first, the act did not cause bodily harm and, second, the record does not establish that he acted intentionally.

The statute setting forth the offense of felony fourth-degree assault of a peace officer provides as follows:

> Whoever physically assaults a peace officer . . . when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor . . . . If the assault inflicts demonstrable bodily harm or the person intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer, the person is guilty of a felony . . . .

8

Minn. Stat. § 609.2231, subd. 1 (2014). The phrase "physically assaults," as used in this statute, means committing fifth-degree assault. *State v. Struzyk*, 869 N.W.2d 280, 285 (Minn. 2015). A person commits fifth-degree assault if he "(1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.224, subd. 1 (2014). The phrase "bodily harm," as used in the assault statute, is defined by statute to mean "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2014). In interpreting section 609.2231, subdivision 1, the supreme court stated, "A mere *potential* to cause bodily harm through the transfer of bodily fluids or feces does not satisfy the legal standard for bodily harm." *Struzyk*, 869 N.W.2d at 289. Rather, bodily harm does not exist unless an assault victim perceives a "minimal amount of physical pain" or experiences a weakened physical condition. *See, e.g.*, *State v. Jarvis*, 665 N.W.2d 518, 522 (Minn. 2003) (concluding that victim sustained bodily harm from involuntary ingestion of drugs, which caused grogginess, inability to move, and disorientation); *State v. Mattson*, 376 N.W.2d 413, 414-15 (Minn. 1985) (concluding that victim sustained bodily harm because defendant's contact caused bruising); *State v. Johnson*, 277 Minn. 230, 237, 152 N.W.2d 768, 773 (1967) (concluding that victim sustained bodily harm because he felt pain when defendant struck him).

In this case, the record reveals only that "some spit came out of [Sabahot's] mouth and hit [the officer]." There was no statement at the plea hearing as to whether Sabahot's spit had any particular effect on the officer. Without such additional evidence, it would not be reasonable for the district court to infer that the officer experienced "physical pain

9

or injury, illness, or any impairment of physical condition." *See* Minn. Stat. § 609.02, subd. 7. It is possible that, in some circumstances, a person might experience bodily harm after being spat upon. But, to reiterate, the "mere *potential* to cause bodily harm through the transfer of bodily fluids or feces does not satisfy the legal standard for bodily harm." *Struzyk*, 869 N.W.2d at 289. Consequently, the state's evidence is not "sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty." *See Theis*, 742 N.W.2d at 649.

Thus, Sabahot's *Norgaard* plea to the charge of felony fourth-degree assault of a peace officer lacks a proper factual basis on the ground that the alleged act did not cause bodily harm. In light of that conclusion, it is unnecessary to consider Sabahot's argument that the record does not establish that he acted intentionally.

## C. Remedy

Having concluded that one of Sabahot's guilty pleas is valid and that one of his guilty pleas is invalid, we must consider the appropriate appellate remedy. Neither party's brief considers this scenario. At oral argument, we asked counsel for both parties what relief would be appropriate in this situation. Neither attorney provided clear guidance to the court.

This court has recognized that a plea agreement "represent[s] a bargained-for understanding between the government and criminal defendants in which each side forgoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." *State v. Meredyk*, 754 N.W.2d 596, 603 (Minn. App. 2008) (quotations omitted). In a case in which a district court erred in sentencing after a plea

agreement, this court reversed and remanded for resentencing because the erroneous sentence was part of "an intricate plea agreement involving many crimes" in which "[e]verything was interrelated" such that "it would be inappropriate for this court to make piecemeal corrections without regard to the effect of the corrections on the plea bargain." *State v. Misquadace*, 629 N.W.2d 487, 491 (Minn. App. 2001), *aff'd*, 644 N.W.2d 65 (Minn. 2002). In a similar context, the supreme court has stated that various "components" of a plea agreement may be "interrelated" such that, if one particular term of a plea agreement is deemed invalid, "the district court should be free [on remand] to consider the effect" that the invalid term may "have on the entire plea agreement." *State v. Lewis*, 656 N.W.2d 535, 539 (Minn. 2003). These principles were applied in *State v. Montermini*, 819 N.W.2d 447 (Minn. App. 2012), in which this court concluded that, after partial postconviction relief due to invalid guilty pleas, a district court did not err by granting a motion by the state to vacate other convictions implicated by a plea agreement and to return the parties to the positions they occupied before the plea agreement. *Id.* at 454-55.

In this case, the plea agreement between the state and Sabahot provided that Sabahot would plead guilty to the drug-possession charge in the first case and the charge of assaulting a peace officer in the second case and that the state would dismiss the remaining charges in both cases. Each party should have an opportunity to present argument to the district court concerning the proper resolution of the two cases. Therefore, we remand the matter to the district court for further proceedings not inconsistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**

11