GILDEA, Chief Justice.
*505 In this case we are asked to determine whether the postconviction court erred by denying appellant Joseph Haywood Campbell's petition for postconviction relief without an evidentiary hearing. Because we conclude that the postconviction court did not err, we affirm.
FACTS
A Ramsey County jury found Campbell guilty of the first-degree premeditated murder of Naressa Turner, committed for the benefit of a gang, in violation of Minn. Stat. § 609.185(a)(1) (2016) and Minn. Stat. § 609.229, subd. 2 (2016). State v. Campbell , 861 N.W.2d 95, 97-98 (Minn. 2015). Witness testimony suggested that Turner's murder was in retaliation for the role she had played in setting up the February 2012 murder of an Eastside Boys gang member.[1]
Campbell, who was an associate of the Eastside Boys gang, visited the home of witness L.J. on the day of Turner's murder. According to L.J.'s trial testimony, Campbell had a phone conversation while he was at her home. During that conversation, Campbell learned that Turner was back in the area after having moved away. L.J. testified that Campbell said "f**k her" and that Turner was an "OP," which means from a different gang or from the other side of the neighborhood. L.J. also testified that Campbell had a gun in his possession at the time.
After he left L.J.'s home, Campbell rode with I.R., D.M., and C.B. to a Super USA gas station in St. Paul. Campbell was recorded by the gas station surveillance camera wearing a black North Face jacket and a Halloween mask. D.M. testified that Campbell still had the mask when he returned to the car after leaving the gas station.
Turner was at the same Super USA gas station. She was there with two companions to purchase marijuana. Turner and her companions met L.H. at the station and followed him out of the station. L.H. drove a Chevrolet Malibu, and Turner followed *506 in a Cadillac Escalade. Both vehicles drove through an alley and parked.
I.R. testified that he, Campbell, D.M., and C.B. then drove through the same alley. After passing by the Escalade, Campbell and C.B. asked to be let out of the car. I.R. also testified that, as they passed the Escalade, he heard someone in the back seat say they could not believe Turner was on the East Side.
Minutes after Campbell was let out of the car, a masked person approached the Escalade and fired nine shots from a handgun. Turner sustained multiple gunshot wounds, which resulted in her death. Approximately 15 minutes later, I.R. spotted Campbell on the street and gave him a ride. I.R. noted that Campbell was no longer wearing the black North Face jacket. Campbell subsequently asked to be dropped off, and he then disappeared from St. Paul for 6 weeks.
The jury found Campbell guilty of first-degree premeditated murder for the benefit of a gang. Campbell , 861 N.W.2d at 97-98. The district court convicted Campbell of that offense and sentenced him to life imprisonment without the possibility of release. Id. Campbell appealed his conviction, and we affirmed. Id.
Following his direct appeal, Campbell filed a petition for postconviction relief. In his petition, Campbell alleged that L.J. recanted her trial testimony. He also alleged that his trial counsel was ineffective and that the State did not disclose exculpatory information. The postconviction court denied the petition without an evidentiary hearing.
The postconviction court rejected the witness-recantation claim, determining that the test from Larrison v. United States , 24 F.2d 82, 87-88 (7th Cir. 1928) was not met.[2] The postconviction court also denied relief on the claims for failure to disclose exculpatory evidence and ineffective assistance of counsel after determining that Campbell could have raised those claims on direct appeal, and they were therefore barred by State v. Knaffla , 309 Minn. 246, 243 N.W.2d 737 (1976). The court alternatively denied relief on Campbell's claim for ineffective assistance of counsel after concluding that even if the claim were true, Campbell was not entitled to relief. This appeal follows.
ANALYSIS
On appeal, Campbell argues that the postconviction court erred in concluding that the allegations in his petition failed to meet the standard set out in Larrison for witness-recantation claims. Campbell also contends that the postconviction court erred in concluding that Knaffla bars his ineffective-assistance-of-counsel claim and his claim that the State failed to turn over exculpatory evidence as required under Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finally, Campbell asserts that the postconviction court erred by not holding an evidentiary hearing on his claims. We review the denial of a petition for postconviction relief, including the petitioner's request for an evidentiary hearing, for an abuse of discretion. Colbert v. State , 870 N.W.2d 616, 621 (Minn. 2015). We review legal issues de novo and factual findings for clear error. Id.
I.
We turn first to Campbell's witness-recantation claim. Campbell argues that L.J.
*507 recanted her trial testimony and that he therefore is entitled to a new trial or, at a minimum, an evidentiary hearing. The postconviction court concluded that Campbell's claim did not satisfy the test from Larrison . The postconviction court therefore denied Campbell's petition and his motion for an evidentiary hearing.
A.
The Larrison test requires that: (1) the court is reasonably well-satisfied that the testimony given by a material witness is false; (2) without that testimony the jury might have reached a different conclusion; and (3) the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial. Williams v. State , 692 N.W.2d 893, 896 (Minn. 2005). Although the first two prongs are mandatory, the third prong, while relevant, is not a requirement for relief. Ortega v. State , 856 N.W.2d 98, 103 (Minn. 2014).
The postconviction court rejected Campbell's witness-recantation claim, concluding that it failed under all three prongs of the Larrison test. We need not decide whether Campbell's claim fails under the second or third prong, because we conclude it fails to meet the first prong. See Martin v. State , 865 N.W.2d 282, 291 (Minn. 2015) (explaining that because the petitioner failed to satisfy the first prong of the Larrison test, it was "not necessary to address the other Larrison criteria").
On the first prong, the postconviction court found that Campbell's allegation that L.J.'s testimony "was false is based on a letter ... with no statements from the witness herself." The record supports that finding. The letter Campbell offered is handwritten and signed by "Business as Usual." Campbell argues that the letter is from L.J.'s uncle, and that it provides evidence that L.J. is recanting her trial testimony. But the letter is not a sworn statement, and the record does not establish who wrote it. Moreover, the letter does not identify L.J. as the recanting witness, explain why the witness has chosen to recant, or even describe what part of the testimony is being recanted. Finally, the letter contains hearsay within hearsay because it is an out of court statement that a witness (allegedly L.J.) told the letter's author that the witness was recanting her testimony.
In addition to the letter, Campbell offered an affidavit from his counsel. The affidavit asserts that L.J.'s uncle told Campbell that L.J. "falsely testified" against Campbell at his trial and that she "is willing to recant." The affidavit also states that Campbell's counsel went to L.J.'s home and attempted to interview her about Campbell's trial, but L.J. was not available. Although the affidavit is notarized, it contains multiple layers of hearsay. Specifically, the affidavit reports that L.J.'s uncle told Campbell that L.J. told her uncle that her trial testimony was false and that she was willing to testify to that falsity.
As the postconviction court found, the record contains no direct statements from L.J. that she is actually recanting any of her trial testimony. At best, the record contains hearsay evidence that she is "willing" to do so. But we have "never held" that hearsay evidence is sufficient to warrant a new trial under the first prong of Larrison . McKenzie v. State , 872 N.W.2d 865, 875 (Minn. 2015).
Based on this analysis, we hold that the postconviction court properly determined that Campbell did not satisfy the first prong of Larrison and was therefore not entitled to a new trial on his witness-recantation claim.
*508 B.
Campbell argues that even if he is not entitled to a new trial, he is at least entitled to an evidentiary hearing on his recantation claim. And he argues that the postconviction court erred in applying the Larrison test to his request for an evidentiary hearing. Specifically, Campbell argues that the Larrison test is applied when deciding whether to grant a new trial, not whether to hold a postconviction evidentiary hearing. Campbell asserts that rather than the Larrison test, the correct standard for granting an evidentiary hearing is whether the newly discovered evidence that L.J.'s testimony is something other than what she testified to at trial might cause the jury to reach a different conclusion. The State contends that although a different threshold may apply when awarding an evidentiary hearing, the Larrison test is still applicable to Campbell's witness-recantation claim. The State further asserts that because the postconviction court concluded that Campbell failed to satisfy the first prong of Larrison , it did not abuse its discretion in denying Campbell's motion for an evidentiary hearing.
The State is correct that the Larrison test is applicable when addressing whether a witness-recantation claim requires an evidentiary hearing. In applying the Larrison test, we must first assume the truth of the allegations in the petition. Ortega , 856 N.W.2d at 103. We ask whether the allegations, assuming they are true, would be legally sufficient to entitle a defendant to relief. Caldwell v. State , 853 N.W.2d 766, 772 (Minn. 2014). A hearing is required unless, after applying Larrison , "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2016).
In this case, the postconviction court did not abuse its discretion in concluding that Campbell was not entitled to an evidentiary hearing on his witness-recantation claim. The postconviction court determined that the facts alleged in the petition did not satisfy the first prong of Larrison. Campbell asserts, and we agree, that any doubts as to whether to grant an evidentiary hearing should be resolved in his favor. Ferguson v. State , 645 N.W.2d 437, 446 (Minn. 2002). And although evidentiary hearings are usually necessary to evaluate the reliability of the recantation for purposes of the first prong of Larrison , the proffered evidence must bear sufficient "indicia of trustworthiness" to warrant an evidentiary hearing. Caldwell , 853 N.W.2d at 770.
That standard is plainly not met here. See id. at 771 (concluding in part that a handwritten note lacked sufficient indicia of trustworthiness because it was unsworn, undated, did not state which parts of the testimony were false, and misspelled the name of the witness who was allegedly recanting); Vance v. State , 752 N.W.2d 509, 514-15 (Minn. 2008) (concluding that the affidavits of two witnesses recanting their trial testimony lacked sufficient indicia of trustworthiness to merit an evidentiary hearing because the reasons given for falsely testifying were vague and did not make sense); State v. Ferguson , 742 N.W.2d 651, 659-60 (Minn. 2007) (concluding that an unsigned memorandum written by a defense investigator who interviewed the recanting witness was not enough to entitle the petitioner to an evidentiary hearing because "the petitioner has an obligation to make a greater showing of genuine recantation"). In fact, the record here stands in marked contrast to cases where we have concluded that the defendant is entitled to an evidentiary hearing. See Caldwell , 853 N.W.2d at 770-76 (concluding *509 that a signed and notarized affidavit from an investigator who interviewed the recanting witnesses was sufficiently trustworthy and an evidentiary hearing was required); Martin v. State , 825 N.W.2d 734, 743 (Minn. 2013) (concluding that the petitioner was entitled to a hearing because the witnesses offered explanations for the recantations and submitted affidavits that formally recanted their sworn testimony); Dobbins v. State , 788 N.W.2d 719, 734-35 (Minn. 2010) (concluding that a sworn affidavit from someone who spoke directly with the witness recanting was sufficient to entitle the petitioner to an evidentiary hearing).
Because Campbell has not proffered evidence with sufficient indicia of trustworthiness that, if proven true, would satisfy the first prong of the Larrison test, we hold that the postconviction court did not abuse its discretion by summarily denying Campbell's witness-recantation claim without an evidentiary hearing.
II.
We turn next to Campbell's claim asserting ineffective assistance of trial counsel. Campbell asserts that his trial counsel was constitutionally ineffective because counsel did not impeach certain witnesses during trial. The postconviction court concluded that this claim is Knaffla -barred because it was known or should have been known at the time of his direct appeal. The State agrees with the postconviction court that Campbell's claim is Knaffla -barred.
All claims that were known or should have been known at the time of the direct appeal, but not raised on appeal, are procedurally barred from being raised in a later postconviction petition. Davis v. State , 880 N.W.2d 373, 377 (Minn. 2016) ; see Knaffla , 243 N.W.2d at 741 ;[3] see also Minn. Stat. § 590.01, subd. 1 (2016) ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). We agree that Knaffla bars Campbell's ineffective-assistance-of-counsel claim.
During the time of his direct appeal, Campbell was aware of the methods and strategy his counsel used during trial. Therefore, his claim could have been brought on direct appeal. See Sanchez-Diaz v. State , 758 N.W.2d 843, 847 (Minn. 2008) (concluding that, because the petitioner was fully aware of what his trial counsel had done and said during trial, the ineffective-assistance claim should have been brought on direct appeal); McKenzie v. State , 754 N.W.2d 366, 369-70 (Minn. 2008) (same). Because Campbell could have raised his ineffective-assistance-of-trial-counsel claim on direct appeal, it is Knaffla -barred from his subsequent postconviction proceeding.
In urging us to reach a different result, Campbell contends that his case is similar to Leake v. State , 737 N.W.2d 531 (Minn. 2007). In Leake , we concluded that an ineffective-assistance-of-counsel claim was not Knaffla -barred because the record was not sufficiently developed to address the claim. Leake , 737 N.W.2d at 535-36 ; see also McKenzie , 754 N.W.2d at 369 (noting that *510 an ineffective-assistance-of-trial-counsel claim is not Knaffla -barred when the claim "cannot be determined from the district court record and requires additional evidence."). But the actions of Campbell's trial counsel that are at issue here-allegedly failing to impeach witnesses-are within the record we reviewed on Campbell's direct appeal. Therefore, unlike Leake , the record here does not need to be expanded in order to address Campbell's claim. Because Campbell's ineffective-assistance-of-trial-counsel claim is Knaffla -barred, we hold that the postconviction court did not abuse its discretion in summarily denying the claim.
III.
Finally, we turn to Campbell's Brady -violation claim. Campbell alleges that the State violated Brady when it did not disclose that the State treated I.R. more favorably at sentencing on an illegal-possession-of-firearms charge because of his testimony against Campbell.[4] I.R. was the driver of the car that Campbell exited minutes before the murder of Turner. During trial, I.R. testified that he did not receive anything from the State in exchange for his testimony. Campbell asserts that because I.R. did receive consideration from the State and because the State did not make that fact known to Campbell, the State committed a Brady violation.[5] He further asserts that Knaffla does not bar his claim because resolution of the claim requires additional evidence beyond what is in the trial record. The State counters that Campbell's claim should have been raised on direct appeal.
We need not decide whether Campbell could have raised the Brady claim on direct appeal. Even assuming the truth of the allegations Campbell makes, Campbell is not entitled to postconviction relief.
Under Brady , suppression by the State of material evidence favorable to the defendant violates the constitutional guarantee of due process. Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Three elements must be met to succeed on the claim of a Brady violation: (1) the evidence must be favorable to the defendant as either exculpatory or impeaching; (2) the evidence must have been suppressed by the prosecution, intentionally or otherwise; and (3) the evidence must be material. Walen v. State , 777 N.W.2d 213, 216 (Minn. 2010). In other words, the absence of the evidence must have caused prejudice to the defendant. Pederson v. State , 692 N.W.2d 452, 459 (Minn. 2005) (citing Strickler v. Greene , 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ).
Assuming Campbell's allegations are true, the first two prongs are met. His claim then hinges on the third prong of the *511 Brady analysis, whether the evidence was material. Walen , 777 N.W.2d at 216. Evidence is material under Brady if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Hunt , 615 N.W.2d 294, 299 (Minn. 2000) (quoting United States v. Bagley , 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ) (internal quotation marks omitted). A "reasonable probability is one that is sufficient to undermine confidence in the outcome." Pederson , 692 N.W.2d at 460 (quoting Bagley , 473 U.S. at 682, 105 S.Ct. 3375 ) (internal quotation marks omitted).
Based on our review of the record, we conclude that evidence of a deal between I.R. and the State was not material in this case for two reasons. First, I.R.'s credibility was successfully impeached by the defense at trial. In response to questions asked by Campbell's counsel, I.R. admitted to lying to the police on multiple occasions during the investigation and providing unreliable information because he was high on marijuana when the events took place. If a witness has already been impeached, further impeachment would be unlikely to have an effect on the outcome of the case. See State v. Miller , 754 N.W.2d 686, 707 (Minn. 2008) (concluding that because a witness was already impeached at trial, evidence of a plea agreement would not have resulted in a more favorable jury verdict).
Second, most of I.R.'s testimony was also given by D.M., who was in the car with I.R. and Campbell. I.R. provided testimony that placed the mask that multiple witnesses recognized as the mask worn by the shooter in Campbell's possession. I.R. also testified that when he was driving his car through the alley where Turner was, he heard someone in the back seat say they could not believe Turner was on the East Side. Additionally, I.R. testified that Campbell exited his car immediately before the murder of Turner and that when he picked Campbell up 15 minutes later, Campbell was no longer wearing the black North Face jacket he had worn earlier. Much of D.M.'s testimony echoed these statements, including testimony that Campbell was in possession of the mask at the gas station and in the car after the shooting, that Campbell requested to be dropped off after the car they were in drove through the alley, and that he and I.R. saw Campbell a short while after the shooting and picked him up.
Because I.R.'s credibility was already impeached and most of the relevant parts of I.R.'s testimony were also given by D.M., we conclude that additional impeachment based on evidence of a deal between I.R. and the State was not material and Campbell was not prejudiced. We therefore hold that the postconviction court did not err in summarily dismissing Campbell's Brady - violation claim.
CONCLUSION
For the foregoing reasons, we affirm the decision of the postconviction court.
Affirmed.
THISSEN, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

Campbell , 861 N.W.2d at 95, contains a more complete description of the facts and circumstances surrounding the death of Turner.

Larrison has been overruled, see United States v. Mitrione , 357 F.3d 712, 718 (7th Cir. 2004), but Minnesota courts continue to apply the Larrison test in cases involving witness-recantation and false-testimony claims, see Ortega v. State , 856 N.W.2d 98, 103 n.6 (Minn. 2014).

There are two exceptions to the Knaffla bar: (1) if a claim is so novel that the legal basis was unavailable on direct appeal, or (2) if fairness requires review and the petitioner did not deliberately and inexcusably fail to raise the claim on direct appeal. McKenzie v. State , 754 N.W.2d 366, 369 (Minn. 2008). We have not yet decided whether these exceptions also apply to the procedural bar in Minn. Stat. § 590.01, subd. 1. See, e.g. , Carridine v. State , 867 N.W.2d 488, 493 (Minn. 2015). It is not necessary to resolve that issue in this case because Campbell has made no showing that either exception is met.

Under Brady , a plea bargain in exchange for testimony is exculpatory evidence because it can be used to impeach a witness. Giglio v. United States , 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Accordingly, the State is obligated to disclose plea bargains made with witnesses in exchange for their testimony. Id.

In addition, Campbell asserts that the prosecutor's failure to correct I.R.'s false testimony that he did not receive consideration was an error. Campbell, however, fails to cite any legal authority for this claim and provides no other factual or evidentiary support for it. A claim of error "based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." State v. Andersen , 871 N.W.2d 910, 915 (Minn. 2015). As this issue was not adequately briefed and no prejudicial error is "obvious on mere inspection," we will not consider Campbell's failure-to-correct-false-testimony argument. Id.