*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1117**

State of Minnesota,
Respondent,

vs.

Paul Scott Seeman,
Appellant.

**Filed November 27, 2023**
**Affirmed**
**Connolly, Judge**

Rice County District Court
File No. 66-CR-14-1473

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian M. Mortenson, Rice County Attorney, Sean R. McCarthy, Assistant County Attorney, Faribault, Minnesota (for respondent)

Drake D. Metzger, Metzger Law Firm, LLC, Minneapolis, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Florey,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant was charged in a 36-count complaint with racketeering, perjury, and multiple theft-related offenses. The charges were severed into three separate matters for trial. He challenges his convictions and sentences in Matters 2 and 3, arguing that (I) the sentence in Matter 3 is double punishment because he was sentenced in Matter 1, (II) the district court erred in denying his motion to suppress evidence obtained pursuant to an August 2013 search warrant, (III) the evidence was insufficient to support the jury's guilty verdict in Matter 2, (IV) the district court erred in denying appellant's motion to suppress evidence obtained pursuant to a May 2014 search warrant, (V) the evidence was insufficient to prove appellant guilty of racketeering in Matter 3, and (VI) the district court erred in denying his request for a *Franks* hearing regarding the May 2014 search warrant application. Appellant also raises ten other issues in a supplemental pro se brief.[1] Because all of appellant's arguments on either set of issues fail, we affirm.

## FACTS

Based on evidence obtained from search warrants executed on his property in August 2013 and May 2014, appellant Paul Seeman was charged in 2014 with 36 criminal counts, including racketeering, receiving stolen property, theft, false information in a motor vehicle title, and perjury. Appellant moved to sever Counts 2 and 3, which pertained to a motorcycle and became known as Matter 1, and count 24, which pertained to a trailer and

---

[1] These issues are numbered 1-10 with Arabic numerals.

became known as Matter 2; the remaining counts, 1, 4-23, and 25-36, became known as Matter 3.

Following a trial in 2017, a jury found appellant guilty on Matter 1. His motions for a judgment of acquittal or a new trial were denied; he was sentenced and placed on probation for up to five years. He appealed; this court dismissed the appeal in an order opinion because 34 of the 36 counts were still pending. *State v. Seeman*, A17-1975, (Minn. App. Jan. 23, 2018), *rev. denied* (Minn. Apr. 17, 2018). Following a trial in 2018, a jury found appellant guilty on Matter 2. Appellant's alternative motions for judgment of acquittal, a new trial, and a reopening of an omnibus hearing were denied; his motion to stay sentencing on Matter 2 until the conclusion of Matter 3 was granted.

In 2019, appellant again challenged the decision in Matter 1; this court dismissed the appeal, *State v. Seeman*, No. A19-2084 (Minn. App. Jan. 2, 2020), *rev. granted* (Minn. Feb. 26, 2020), as untimely. The Minnesota Supreme Court vacated the dismissal and remanded the case for reinstatement of the appeal. *State v. Seeman*, A19-2084 (Minn. Feb. 28, 2020) (order). On remand, we affirmed the denial of appellant's motion to suppress evidence obtained during the execution of a search warrant because the affidavit established probable cause to search appellant's property for a motorcycle. *State v. Seeman*, No. A19-2084, 2021 WL 79524, at *5 (Minn. App. Jan. 11, 2021), *rev. denied* (Minn. Mar. 30, 2021), *(Seeman I)*. We also concluded that there was no abuse of discretion in the denial of appellant's request to reopen an omnibus hearing because appellant's allegations failed to make the showing necessary under *Franks v. Delaware,*

3

438 U.S. 154 (1978). *Id.* at *7. Appellant was later found in violation of probation on Matter 1 and sentenced to 60 days in jail.

In 2022, respondent State of Minnesota dismissed Counts 30, 33, and 36. Following a jury trial on Matter 3, appellant was found guilty of the remaining counts except count 21 and sentenced to 117 months in prison for Count 1, racketeering, and ordered and to pay restitution of $124,068.65. He was also sentenced and received lesser sentences on counts 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 15, 16, 19, 22, 23, 24, 26, 27, 29, 31, 32, 34, and 35. He appealed and filed a supplemental pro se brief; this appeal was stayed for postconviction proceedings.

In his principal brief, appellant argues that: (I) he is entitled to relief for the prejudice caused by severing the complaint into three matters; (II) the district court erred in finding that the police sergeant who saw a stolen item on appellant's property was lawfully on appellant's property; (III) the district court erred in denying appellant's motion for a judgment of acquittal on Matter 2; (IV) the district court erred in concluding that the affidavit for the May 5, 2014, search warrant provided probable cause for issuing the warrant; (V) the evidence does not support his racketeering conviction on Count 1; and (VI) the district court erred in concluding that appellant did not establish sufficient grounds for a *Franks* hearing. In his supplemental pro se brief, he argues that (1) the district court erred in finding that there was probable cause for the racketeering charge; (2) the postconviction court abused its discretion in denying relief on appellant's ineffective-assistance-of-counsel claim; (3) the state engaged in subornation of perjury when it elicited testimony it knew was false from one witness; (4) the district court abused its discretion in

4

denying appellant's motion to remove the district court judge assigned to his case; (5) the district court abused its discretion by denying appellant's motion to suppress the evidence obtained from the June 26, 2014, warrant on his cell phone; (6) the district court abused its discretion in denying the motion to reopen the omnibus hearing following the testimony of one witness; (7) the district court abused its discretion by using the *Hernandez* method to calculate appellant's criminal-history score; (8) the district court committed reversible error by granting the state's motion to bar appellant from impeaching a witness; (9) the district court committed reversible error by not allowing a representative of a scrap metal company to testify was reversible error; and (10) the district court committed reversible error by not allowing appellant to introduce the pole camera footage in the Matter 3 trial.

## DECISION

### I.      Severing of the Complaint

"On motion of . . . the defendant, the court *must* sever offenses or charges if . . . before trial, the court determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge."  Minn. R. Crim. P. 17.03, subd. 3(1)(b) (emphasis added).  An appellate court reviews a decision on whether to sever charges de novo.  *State v. Fitch*, 884 N.W.2d 367, 378 (Minn. 2016).

Although appellant claims that "nothing in the record indicates that [a]ppellant's counsel moved the district court to sever this matter initially," the record includes  a "Notice of Motion and Motion For Severance of Count Two,"  a "Notice of Motion and Motion for Severance of Count Three," and a "Notice of Motion and Motion for Severance of Count Twenty Four," all stating the time and place when "[appellant], by and through counsel

5

. . . will move the Court for an order . . . severing" these counts "from the other charges in the complaint." Appellant moved to sever the charges.

Appellant also argues that he suffered prejudice from the severing because Matter 1 was sentenced separately from Matters 2 and 3 and the severance resulted in a double punishment: he was sentenced on counts 2 and 3 in Matter 1 to fifteen months in prison, stayed, and to five years of probation, and was not given credit for the probation time, although he was given credit for time served. He offers no support for the view that credit is given for probation time as well as for time served. He further argues that his convictions were used to impeach his credibility in later trials, but again, he offers no support for his view that prior convictions may not be used to impeach. The granting of appellant's motions to sever the charges provides no basis to reverse appellant's conviction for racketeering on Matter 3.

## II. Denial of Motion to Suppress Evidence Resulting from August 13, 2013, Warrant

In reviewing whether there existed a valid exception to the warrant requirement to justify a warrantless search or seizure, appellate courts review the district court's factual findings for clear error and its legal conclusion de novo. *State v. Stavish*, 868 N.W.2d 670, 677 (Minn. 2015). Appellant argues that the evidence resulting from the execution of the August 13, 2013, search warrant, i.e., the presence of a stolen trailer on appellant's property, should have been suppressed because Sergeant H., who saw the trailer when on appellant's property with Deputy S., was not then legally on appellant's property.

6

The district court found that, "[b]ased on prior interactions with [appellant, Deputy S. and Sergeant H.] both went to serve the papers" on another individual who was believed to reside on appellant's property. The trailer was in plain view. The plain-view exception allows seizure without a warrant if (1) an officer is legitimately in the position from which he views the object, (2) the officer has a lawful right of access to the object, and (3) the object's incriminating nature is immediately apparent. *State v. Milton*, 821 N.W.2d 789, 799 (Minn. 2012). The district court found that, while Deputy S. was serving that individual, Sergeant H. saw "a trailer that matched the description of a stolen trailer from Montana he received from [Officer W.]"; both Deputy S. and Sergeant H. "were only on [appellant's] property for one to two minutes" and "remained in the vehicle the entire time"; and Sergeant H. "had a reason to be on [appellant's] property and was legitimately in the position from which he first viewed the trailer." After seeing the trailer, Sergeant H. got further information from Deputy W. and from the victim of the theft; he examined the trailer only after he had this information and obtained a search warrant.

Appellant relies on *State v. Chute*, 908 N.W.2d 578 (Minn. 2018), but *Chute* is distinguishable. In that case, the officer entered the property and searched a stolen camper without a warrant, *id.* at 581; here, Sergeant H. obtained a warrant before getting out of the squad car.

The district court's factual findings contain no error; its legal conclusion that the plain-view exception applied and that the trailer was seized and searched pursuant to a valid warrant is supported by caselaw.

7

## III.    Motion For Acquittal on Matter 2

A motion for acquittal is procedurally equivalent to a motion for a directed verdict and presents the district court with a question of law. *State v. Sam*, 859 N.W.2d 825, 830 (Minn. App. 2015). The standard for granting a motion for a directed verdict is "whether the state's evidence, when viewed in the light most favorable to the state, was sufficient to sustain the conviction." *Id.* The sufficiency of the evidence is reviewed de novo. *Id.* If the state's evidence is chiefly circumstantial, it is sufficient to sustain a conviction only if there are no other reasonable, rational inferences that are inconsistent with guilt. *Id.* at 831. This requires a two-step analysis: the court must first determine the circumstances proved, giving due deference to the factfinder and construing the evidence favorably to the verdict; second, the court must decide whether those circumstances are consistent with guilt and inconsistent with any other reasonable or rational hypothesis, looking at the circumstances as a complete chain that leads directly to the defendant's guilt and excludes any other reasonable inference. *Id.* at 833. The court does not defer to the factfinder's choice between reasonable inferences. *Id.*

To convict appellant of Count 24 in Matter 2, the state had to prove that: (1) the trailer was stolen; (2) appellant received, possessed, transferred, bought, or concealed it; (3) appellant knew or had reason to know it was stolen; (4) this occurred in Rice County on or about August 5, 2013; and (5) the trailer's value was more than $5,000 but less than $35,000. *See* Minn. Stat. §§ 609.53, subd. 1, .52, subd. 3 (2012). Appellant argues only that the state failed to prove he knew or had reason to know the trailer was stolen; he claims that he was an innocent buyer.

Two facts refute this claim. First, appellant testified that, when he bought the trailer, it had a VIN number visible, but Sergeant D., who examined the trailer after it was seized, testified that there was no visible VIN number: it had been painted out or removed. Appellant does not dispute the fact that the absence of a VIN number indicates that a vehicle may have been stolen. Second, when appellant brought an action against the state to have the vehicle returned to him, he provided no documentation that he owned the vehicle; the state returned the trailer to the original purchaser, from whom it was stolen, because that person had documentation of his ownership. Appellant argues in his brief that the fact that he took legal action to have the trailer returned to him and subsequently dismissed the lawsuit after the trailer was returned to the original owner is itself proof that appellant was an innocent buyer, but he does not explain why an innocent buyer would not have had documentation and would have dismissed the lawsuit. The state met its burden to prove appellant was not an innocent buyer.

## IV. Denial of Motion to Suppress Evidence Resulting from May 5, 2014, Warrant

> A sufficient 'nexus' must be established between the evidence sought and the place to be searched. However, direct observation of evidence of a crime at the place to be searched is not required. A nexus may be inferred from the totality of the circumstances. Among the circumstances . . . our court [considers on review] the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items.

*State v. Yarbrough*, 841 N.W.2d 619, 622-23 (Minn. 2014) (citations and footnote omitted).

The May 5, 2014, warrant was based on evidence obtained from T.H., appellant's son, and D.O., an accomplice of appellant. Appellant argues here, as he argued to the

9

district court, that there was no nexus between the warrant application and items 5-10 of the May 5, 2014, warrant: (5) equipment relating to altering or creating fictitious vehicle titles and VIN plates; (6) inspection of all vehicles for evidence of tampering and auto theft; (7) inspection of vehicle parts or identifying numbers for evidence of auto theft; (8) equipment, vehicles, and tools used in furtherance of vehicle parts removal, creating fictitious titles, and VIN's; (9) receipts, checks and miscellaneous papers tending to show business transactions regarding the sale of stolen vehicles; and (10) computers, cell phones, and data showing evidence of conspiracy to commit motor vehicle theft, creation of fictitious titles, and alteration of VIN's.

The district court determined that:

> [T]here was evidence that [appellant] was involved in ongoing criminal activity involving vehicles and that [appellant] operated an engine/auto repair business. The information provided by [T.H. and D.O.] about the altering of VIN plates and stolen vehicles being located at [appellant's] property tends to show that [appellant] was hiding vehicles, parts, equipment use[d] in the criminal enterprise on his property, and papers detailing the same. The totality of the circumstances support[s] that [appellant] was engaged in an ongoing criminal operation trafficking stolen vehicles. Based on the search warrant application and affidavit as a whole, there was a nexus between the vehicles, parts, equipment, and other items listed in provisions 5 through 10.

This court has already agreed with the district court in *Seeman I*, when it extensively analyzed appellant's argument that the motorcycle involved in Matter 1, and listed as item 2 on the May 5, 2014, warrant, was improperly seized under the warrant because of a lack of nexus. This court concluded that "the information in the May 5, 2014, search-warrant affidavit provided a substantial basis for the issuing court to conclude that probable cause

10

existed to search [appellant]'s property for the Harley-Davidson motorcycle." *Seeman I,* 2021 WL 79524, at \*5. That decision is now law of the case under *Lynch v. State*, 749 N.W.2d 318, 321 (Minn. 2008) ("Because on direct appeal we explicitly considered, addressed, and made a holding regarding [the defendant's] current postconviction claim, we conclude that . . . the claim is barred by the doctrine of law of the case.") (quotation omitted).

## V.     Racketeering Conviction

Appellant challenges the sufficiency of the evidence supporting his racketeering conviction. The statutes in the Minnesota Racketeer Influenced and Corrupt Organizations Act (RICO) "shall be liberally construed to achieve their remedial purposes of curtailing racketeering activity and controlled substance crime and lessening their economic and political power in Minnesota." Minn. Stat. § 609.901 (2012).

An "enterprise" under the RICO Act includes "a group of persons, associated in fact although not a legal entity." Minn. Stat. § 609.902, subd. 3 (2022). Questions of statutory interpretation are reviewed de novo. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019). Appellant argues that the state "failed to establish that an enterprise existed as required [for him] to be found guilty of racketeering."[2] This court recently addressed the meaning of "enterprise" in *State v. Paulson*, 984 N.W.2d 902, 907-08 (Minn. App. 2023). *Paulson* concerned a group of which seven members were employees, at differing levels—district

---

[2] When D.O., appellant's accomplice, was being cross-examined by appellant (pro se) about their second meeting, he described it as "more of a meeting you for lunch and getting to know you and you getting to know me before we started a criminal enterprise."

manager, team leads, and sales representatives—of an employer that was not aware of their criminal activity and was not charged. *Id.* at 907. The employer's lack of involvement in the criminal activity caused the district court to determine that there was no enterprise and dismissed the racketeering charge. *Id.* This court reversed the dismissal of the racketeering charge, holding that "[a] group of persons collectively participating in or authorizing a pattern of criminal activity and deriving proceeds from that activity is an 'enterprise' within the meaning" of the RICO statutes. *Id.* at 904.

Here, appellant directed the enterprise: he instructed an accomplice to steal some vehicles and to locate and steal other vehicles, and paid him a fixed sum for each theft, either in cash or as an installment on a vehicle for himself.[3] There was undoubtedly a hierarchical structure: appellant told D.O., an employee and accomplice, what to steal and what to look for to steal, and paid him for his thefts of specific items. Appellant had a business; D.O. said he was not a legal employee of the business, but "[j]ust a thief." Other testimony showed that appellant altered the vehicles, including removing and transferring VIN numbers, and sold them for a profit. This evidence was sufficient to demonstrate the existence of an enterprise.

Appellant does not address *Paulson* in his brief or his reply brief but relies on an earlier nonprecedential decision, *State v. Bracy*, No. C6-02-982, 2002 WL 31750265

---

[3] At trial, on cross examination, D.O. said:

> I stole the vehicles for that black truck, and I did my part, and I never got the black—title for the black truck in my name or ever saw the black truck again, so I guess in my eyes [I am] still owed $500.00 for [each of] 20 vehicles, $10,000.

(Minn. App. Dec. 10, 2002), *rev. denied* (Minn. Feb. 18, 2003). Appellant's reliance is misplaced: *Bracy* is both nonprecedential and distinguishable. In that case, the appellant and his co-conspirators each shared customers, pooled resources equally to buy cocaine, and kept the profits from his individual sales. *Bracy*, 2002 WL 31750265, at *3. *Bracy* reversed a conviction for racketeering for the benefit of a gang because the defendant's

> criminal activities d[id] not independently exceed what would be necessary for him to have committed the predicate crimes of conspiracy and aiding and abetting a controlled-substance crime. The record indicates that [the defendant] and his co-conspirators collaborated for the purpose of selling crack cocaine. There is no evidence of a formal hierarchy or anything more structured than the lowest sort of an informal organization. . . . The conduct in this record does not rise to the level of "racketeering" as defined by Minnesota case law. . . .
>
> . . . .
>
> After reversing the conviction for racketeering for the benefit of a gang, [the defendant] is left with convictions for three counts of third-degree conspiracy to commit controlled-substance crimes, and one count of second-degree controlled-substance crime, aiding and abetting the aggregate sales of cocaine. These convictions are not disturbed by this appeal.

*Id.* at *2-3.

The evidence here supported the existence of the requisite enterprise.

## VI. The Denial of a *Franks* Hearing[4]

Again, this court addressed and resolved the issue in *Seeman I*.

> Because [appellant]'s allegations do not show that the search-warrant affidavit would have lacked probable cause if the alleged omission were included, [appellant] failed to make the necessary showing under *Franks* to challenge the validity of the search warrant. For this reason, the district court did not abuse its discretion by denying [appellant's] motions to reopen the omnibus hearing to litigate the cell-phone-search issue.

*Seeman I*, 2021 WL 79524, at *7. That decision is now law of the case. *See Lynch*, 749 N.W.2d at 321.

**Pro Se Issues**

**1. Alleged Lack of Probable Cause For Racketeering Charge**

Having challenged the racketeering conviction on the ground that there was no enterprise, appellant now argues pro se that "[d]espite evidence to the contrary, the district court found that the state had established probable cause for [a]ppellant to stand trial on Count I, Racketeering." A defendant's probable cause challenge is irrelevant on appeal from a final judgment of conviction because the standard of review for sufficiency of the evidence to support the conviction is much higher than probable cause. *State v. Holmberg*, 527 N.W.2d 100, 103 (Minn. App. 1995), *rev. denied* (Minn. Mar. 21, 1995). However, we address this issue in the interest of completeness.

---

[4] The *Franks* issue is not new. Appellant's first motion to reopen the omnibus hearing on the alleged *Franks* violation was denied by the district court in January 2017; his second motion was denied in March 2017, and this court denied a writ of mandamus on the issue in April 2017. His third motion was denied in July 2019; the denial was affirmed by this court in January 2021, and the supreme court denied review in March 2021. The fourth motion was denied orally in September 2021.

A RICO enterprise requires:

> (1) a common purpose among the individuals associated with the enterprise; where
> (2) the organization is ongoing and continuing, with its members functioning under some sort of decision making arrangement or structure; and where
> (3) the activities of the organization extend beyond the commission of the underlying criminal acts either to coordinate the underlying criminal acts into a pattern of criminal activity or to engage in other activities.

*Paulson*, 984 N.W.2d at 907 (quoting *State v. Huynh*, 519 N.W.2d 191, 196 (Minn. 1994) (footnote omitted)). Appellant argues that the second and third criteria were not met. As to the second, the district court found that:

> [T.H.] said he witnessed [appellant] stealing and reselling vehicles over a period of 6 months. [D.O.], in his statement to law enforcement, admitted that he was involved in stealing about 200 vehicles, trailers, and other items at [appellant]'s direction. These statements support the argument that [appellant's] organized scheme was ongoing and continuing at the behest of [appellant].

Appellant claims that "[D.O.] was a cooperating police informant beginning from his March 7, 2014 arrest," that T.H. testified "[D.O.] and [a]ppellant had a falling out . . . sometime between January and February of 2014," and that therefore "[l]aw enforcement had absolutely no evidence that an alleged organization was ongoing and continuing at the initiation of their investigation in March of 2014." But the fact that some evidence may have opposed the district court's finding of probable cause does not mean that no evidence supported it. Evidence at a probable cause hearing should be viewed in the light most favorable to the state. *State v. Knoch*, 781 N.W.2d 170, 178 (Minn. App. 2010), *rev. denied* (Minn. June 29, 2010). The decision on probable cause is based on the entire record,

15

including reliable hearsay. *State v. Florence*, 239 N.W.2d 892, 899-901 (Minn. 1976); Minn. R. Crim P. 11.04, subd. 1(c). In omnibus hearings, "the trial judge must exercise an independent and concerned judgment addressed to this important question: Given the facts disclosed by the record, is it fair and reasonable . . . to require the defendant to stand trial?" *Florence*, 239 N.W.2d at 902. Here, it was fair and reasonable to require appellant to stand trial on racketeering.

## 2. Ineffective Assistance of Counsel

Appellant essentially argues that, since 2014, the various decisions against him have been due to the ineffective assistance of his counsel on four grounds: (1) counsel failed to request an extension to wait for the results of the analysis of appellant's phone by a forensics expert, who did not obtain the phone until eleven days before the hearing; (2) counsel failed to work with the private investigator appellant hired and would not allow him to assist in their investigation; (3) counsel failed to properly establish a *Franks* violation, notwithstanding counsel's four attempts to do so (see discussion supra at issue 6); and (4) appellate counsel failed to assert ineffective assistance of trial counsel.

Appellant argues that, but for counsel's unreasonable performance, (1) the district court "would have found a *Franks* violation," (2) counsel "would have been in a much stronger position to arguing for severing out all of [T.H.'s] statements in the May 5, 2014 warrant application as fruit of the poisonous tree," and (3) the warrant "would have been found to be unconstitutional and very likely most . . . if not all of the evidence obtained from it would have been suppressed." These arguments are not supported by the record. "To prove ineffective assistance of counsel, a defendant must show that (1) his attorney's

16

performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that the outcome would have been different, but for counsel's errors." *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017) (quotations omitted); *see also Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Appellant has not shown either that counsel's assistance fell below an objective standard of reasonableness or that, if it had fallen below that standard, the outcome would have been different.

### 3. Subornation of Perjury

Appellant relies on the *Larrison* rule, derived from *Larrison v. United States*, 24 F.2d. 82 (7th Cir. 1928), *overruled by United States v. Mitrione*, 357 F. 3d 712, 718 (7th Cir. 2004), to argue that a new trial is warranted because the state engaged in subornation of perjury.[5]

> The *Larrison* rule provides that a new trial may be granted on the grounds of false or perjured testimony where:
> (a) The court is reasonably well satisfied that the testimony given by a material witness is false.
> (b) That without [the testimony] the jury *might* have reached a different conclusion.
> (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*State v. Nicks*, 831 N.W.2d 493, 511 (Minn. 2013). Appellant argues that, during his cross-examination of D.O., some of the dates on which D.O. testified that he stole two specific vehicles for appellant were not accurate. But D.O. said he stole about 200 vehicles for

---

[5] Although *Larrison* was overruled by *Mitrione*, "Minnesota courts continue to apply the *Larrison* test in cases involving witness-recantation and false-testimony claims." *Campbell v. State*, 916 N.W.2d 502, 506 n.2 (Minn. 2018).

appellant over a period of time in 2013 and 2014, and he was testifying about this in 2022; inaccuracy in his recollection was not surprising.

The prongs of the *Larrison* rule are conjunctive, not disjunctive. *See id*. Appellant does not address the second prong of the *Larrison* rule, and there is no reason to suppose that the jury's verdict on the numerous counts of the complaint would have been different without this testimony.[6] Inaccuracies in D.O.'s testimony do not entitle appellant to a new trial.

**4. District Court Judge's Refusal to Recuse**

The transcripts reflect that the same district court judge handled this case from 2015 until 2022. Appellant's motion to remove her for cause was denied. He argues on appeal that she was disqualified and should have recused herself because her impartiality was questionable. A decision on a motion to remove a judge for cause is within the district court's discretion and will only be reversed on appeal if the district court abused its discretion. *Hooper v. State*, 838 N.W.2d 775, 790 (Minn. 2013).

Appellant's support for this argument is: (1) a confrontation between himself and a bailiff over appellant's refusal to stand when those in court were asked to do so in 2019, (2) an incident in a civil contempt matter in 2021 when appellant asked the judge if he was held in custody in retaliation for filing a complaint against her with the Board of Judicial

---

[6] In support of the third prong, appellant quotes his own question to D.O. during the cross-examination: "Is the first time that you've . . . said that?" but does not mention that D.O. did not reply because the state's "improper impeachment" objection was sustained.

Standards; (3) the fact that appellant's question about retaliation was not in the transcript and the court reporter would not give him an audio recording; (4) the judge allegedly used the procedural posture of the case as a punishment because, in appellant's view, all three Matters should have had separate trials with "a singular sentencing date"; (5) appellant's attempt to address his concerns about the judge's partiality at the outset of trial were ignored; (6) the judge yelled at appellant and subsequently apologized, but denied yelling; (7) the judge denied appellant's motion to have surgery during the trial and denied it again by remanding him into custody immediately after trial; (8) the judge admonished appellant for interactions outside the courtroom; and (9) the judge made inappropriate comments about the state's attorney, saying that he projected more than most lawyers, which she appreciated, but she had "not observed him acting inappropriately." None of these incidents, nor all of them together, during the many years of this case, indicate judicial bias against appellant, and there was no abuse of discretion in the denial of appellant's motions to remove the district court judge.

### 5. Denial of Motion to Suppress Information from June 26, 2014, Search Warrant of Appellant's Cell Phone

Appellant's cell phone was seized with a search warrant, but evidence from it was not used at trial. He asserts that this court "must address the constitutionality of the cell phone search so that in the event of a new trial, the phone would be suppressed." Appellant argues that the search warrant was unconstitutionally overbroad, that evidence from it should be suppressed as fruit of the poisonous tree, and that the state's retention of the phone "since April 28, 2014," violates his possessory interest in the phone.

The district court found:

> The State argues that . . . a phone "dump" was the only means available to search for specific evidence relevant only to the criminal activity in the warrant. The reports offered by the State explain the methodology used to tailor and limit the search of the information found on [appellant's] phone to the subject matter at hand. [Appellant] does not offer any evidence that there was any improperly gathered evidence from the cell phone. Therefore, the search warrant for [appellant's] cellphone was not unconstitutional or overbroad.

Appellant does not refute this. Because evidence from the phone was not used, the issue of whether it should have been suppressed is moot. *See Harstad v. City of Woodbury*, 902 N.W.2d 64, 75 (Minn. App. 2017) ("Mootness can be described as the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). As to appellant's possessory interest in the phone, it does not appear that any court has addressed this issue, so there is nothing for this court to review.

## 6.    Denial of Motion to Reopen Matter 3 Omnibus after Testimony of C.R.

C.R. testified that he reported a stolen toolbox to his insurer, which partially paid him for it, that law enforcement returned he toolbox to him and some drill bits that had not been in the toolbox, that neither the insurer nor law enforcement wanted the drill bits, and that he still had them. Appellant thought this testimony entitled him to a mistrial and moved for one; his motion was denied. He argues now that "[a] search warrant that allows law enforcement the discretion to seize tools and ultimately dispose of those tools violates the particularity requirement in the Fourth Amendment, and is objectively unreasonable." Appellant does not explain what connection he has with either the drill bits or C.R., or any

reason that this testimony would entitle appellant to a mistrial. He has therefore waived the argument. *See State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (holding that, in the absence of legal citation to support arguments, the arguments are deemed to have been waived).

**7.      Use of the *Hernandez* Method to Calculate Appellant's Sentence**

The argument on this issue is not clear. Appellant was sentenced on Matter 1 in 2017. He challenges the use of a felony criminal-history point from Matter 1 to increase his criminal-history score when he was sentenced on Matter 3 in 2022. When a defendant is sentenced for two offenses not part of the same behavioral incident, the first offense sentenced may be used to calculate the criminal-history score for subsequent offenses. *State v. Williams*, 771 N.W.2d 514, 521-22 (Minn. 2009) (explaining the *Hernandez* method as "when a defendant is sentenced for multiple offenses on the same day, a conviction for which the defendant is first sentenced is added to his or her criminal history score for another offense for which he or she is also sentenced" and stating that the method does not apply when the offenses arise out of a single behavioral incident). Appellant then says (1) that possession of the motorcycle, the offense for which he was sentenced in 2017, had the same offense date of May 6, 2014, as many of the possession offenses for which he was sentenced in May 2022, but (2) other offenses having that date were "not shown at trial to be affiliated with any alleged racketeering conspiracy, although [they were] presented to the jury as an element of the racketeering offense." How either of these statements relates to the use of the *Hernandez* method is not clear, and consequently we reject the argument.

21

**8.     Granting the State's Motion Barring the Impeachment of D.O.'s Stolen Snowmobile Claims**

Appellant wanted to impeach D.O. by using evidence concerning the snowmobiles in his possession when he was arrested.  The district court ruled that the snowmobiles were irrelevant to appellant's trial and excluded them.  Evidentiary rulings are with the district court's discretion and will be not be reversed unless that discretion is abused.  *State v. Ali,* 855 N.W.2d 235, 249 (Minn. 2014).  Appellant does not explain why the evidence was relevant to his trial and why it was a "reversible error," as he claims.  We see no abuse of discretion in its exclusion.

**9.      Excluding Testimony from a Witness from M. Company**

Because the witness was not on the list of appellant's witnesses, his testimony was excluded.  Appellant says the witness would have testified that "vehicles were not sold as scrap to [M. Company]" and that neither D.O. nor T.H. "had ever delivered stolen vehicles in the form of scrap metal to [M. Company]," thus refuting their testimony on these points.  Appellant blames the district court for refusing to rule immediately on appellant's request to fire his court-appointed attorney, thereby delaying the time at which appellant could begin to prepare his pro se defense, so appellant was "ultimately limited to the motions and trial preparations that the court-appointed attorney had inadequately provided."  It is not clear how this relates to the exclusion of the witness's testimony, so we also reject this argument.

**10.      Excluding the Pole Camera Evidence from the Matter 3 Trial**

Appellant claims that he wanted to introduce the pole camera video to the jury as "an offer of proof that [D.O.] was never seen and that there was no evidence of any criminal activity on the 6-week long video," thus proving that "any alleged organization was not continuing and ongoing."  But testimony indicated that appellant's alleged criminal activities lasted much longer than six weeks and that D.O. had broken off his connection with appellant at a particular point, certainly by the time he became a state's witness. Showing that there was no illegal activity and that D.O. was not on the premises during a particular six-week period, even had such a thing been possible, would not have been probative.  The district court did not abuse its discretion in excluding the video as irrelevant.

In summary, none of the ten issues appellant raises in his pro se brief provides a basis for a new trial; the same is true of the six issues raised in appellant's principal brief.

**Affirmed.**